697 P.2d 1119

**Phyllis HARRELSON, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Avon Products, Inc., Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 2735.**

Court of Appeals of Arizona, Division 1, Department A.

Nov. 15, 1984.

Reconsideration Denied Feb. 5, 1985.

Review Denied April 9, 1985.

---

Tretschok, McNamara & Clymer, P.C. by Patrick R. McNamara, Tucson, for petitioner.

Sandra A. Day, Chief Counsel, Phoenix, for respondent.

Ahern & McCormley, P.C. by J. Lawrence McCormley, Phoenix, for respondent employer.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix by James F. Crane, Tucson, for respondent carrier.

## OPINION

EUBANK, Judge.

In this special action petitioner-employee Phyllis Harrelson (petitioner) asks that the late filing of her worker's compensation claim be excused. In considering her petition, we must decide whether the 1980 amendments to A.R.S. § 23–1061(A) may be applied retroactively to her industrial injury that occurred prior to the effective date of the amendments. We conclude that the amended statute was properly applied retroactively, and that petitioner was not "insane or legally incompetent or incapacitated" within the present meaning of that statute so as to excuse her untimely filing.

We therefore affirm the administrative law judge's award which dismissed petitioner's claim for lack of jurisdiction.

The relevant facts are not in dispute. On March 18, 1980 petitioner was injured in an accident allegedly arising out of and within the course of her employment with respondent employer, Avon Products, Inc. More than a year later, on March 31, 1981, she filed a late claim for worker's compensation benefits with the Industrial Commission.

On May 4, 1981 respondent State Compensation Fund issued its Notice of Claim status denying petitioner's claim. On October 21, 1981 a formal hearing was held before the Industrial Commission. Evidence was presented regarding the reasons for petitioner's failure to file a claim within one year, and whether she was prevented by any incapacitation from filing within that period. On November 12, 1981 the administrative law judge ruled that petitioner did not satisfy the requirements of amended A.R.S. § 23–1061(A) due to her untimely filing, and dismissed the claim for lack of jurisdiction. This review followed.

We decide two issues:

(1) whether the administrative law judge's retroactive application of A.R.S. § 23–1061(A), as amended, was proper; and (2) if the present statute A.R.S. § 23–1061(A) is applicable, was there sufficient evidence to support the administrative law judge's determination that petitioner was not "incapacitated" within the terms of that statute so as to excuse her untimely filing?

## I. A.R.S. § 23–1061(A), AS AMENDED

The version of A.R.S. § 23–1061(A) which was in effect at the time of petitioner's industrial injury read, in part:

> [N]o claim for compensation shall be valid or enforceable unless the claim is filed with the commission by the employee, ... in writing within one year after the injury occurred or the right thereto accrued.

While the statute provided for no exception to the one year statute of limitations, several Arizona cases had held that an injured workman who failed to comply with the one year requirement could be excused from the untimeliness if certain criteria were met. *See, e.g., Nelson v. Industrial Commission,* 134 Ariz. 369, 656 P.2d 1230 (1982); *Janis v. Industrial Commission,* 111 Ariz. 362, 529 P.2d 1179 (1974); *Parsons v. Bekins Freight,* 108 Ariz. 130, 493 P.2d 913 (1972); *Keeler v. Industrial Commission,* 125 Ariz. 333, 609 P.2d 603 (App. 1980). Thus, the case law gave the administrative law judge considerable discretion to hear a late claim.

In 1980 the legislature amended A.R.S. § 23–1061(A), effective January 1, 1981, to read in pertinent part:

> [N]o claim for compensation shall be valid or enforceable unless the claim is filed with the commission by the employee, ... in writing within one year after the injury occurred or the right thereto accrued. The time for filing a compensation claim begins to run when the injury becomes manifest or when the claimant knows or in the exercise of reasonable diligence should know that he has sustained a compensable injury. Except as provided in subsection B of this section, *neither the commission nor any court shall have jurisdiction to consider a claim which is not timely filed under this subsection,* except if the employee or other party entitled to file the claim has delayed in doing so because of justifiable reliance on a material representation by the commission, employer or insurance carrier or if the employee or other party entitled to file the claim is insane or legally incompetent or incapacitated at the time the injury occurs or the right to compensation accrues or during the one-year period thereafter. (Emphasis added).

Under the amended statute the administrative law judge has considerably less discretion to hear a late claim, and is limited to only two statutory exceptions in finding justification for the late filing of a claim. We agree with petitioner that the amended statute has effectively done away with the

old case law exceptions to the one year statute of limitations established by *Parsons* and its progeny. *See McKaskle v. Industrial Commission,* 135 Ariz. 168, 170, 659 P.2d 1313, 1315 (App.1982).

Petitioner argues that the present or amended statute cannot be applied retroactively because A.R.S. § 1–244 provides that "[n]o statute is retroactive unless expressly declared therein."

■ Petitioner argues that *Parsons* and its progeny gave prospective worker's compensation claimants *vested* rights which they did not have before and which were not previously recognized by Arizona law. We disagree. The 1981 amendments to A.R.S. § 23–1061(A) are procedural in nature and may be given retroactive effect. Petitioner has no vested right in the discretion to hear a late claim given by the case law to the Industrial Commission.

As the administrative law judge observed,

Arizona courts "have engrafted an exception onto this general rule. Under the exception a statute does have retroactive effect if it is merely procedural and does not affect an earlier established substantive right."

*Bouldin v. Turek,* 125 Ariz. 77, 78, 607 P.2d 954, 955 (1979), *citing Allen v. Fisher,* 118 Ariz. 95, 574 P.2d 1314 (App.1977). In *Allen,* Division 2 of our court stated that

statutory changes in procedure or remedies may be applied to proceedings already pending except where the statute affects or impairs vested rights,

and that "[l]itigants do not have a vested right in any given mode of procedure." 118 Ariz. at 96, 574 P.2d at 1315. The court also said that a procedural law "prescribes the method of enforcing [substantive] rights or obtaining redress." We agree.

Petitioner likens the amendments to A.R.S. § 23–1061(A) to a statute of limitations, and argues, in citing *Curtis v. Boquillas Land and Cattle Company,* 9 Ariz. 62, 76 P. 612 (1904), *aff'd,* 200 U.S. 96, 26 S.Ct. 192, 50 L.Ed. 388 (1906), that a statute of limitations will not be given a retroactive operation unless the legislature so provides. Petitioner's analogy is misplaced however. The one year statute of limitations was not changed here. Rather, the legally acceptable excuses for lifting the statute's bar were changed. The statute of limitations argument is nonetheless useful in focusing upon the distinction between substantive and procedural statutes, and their effect upon vested rights.

In *Chevron Chemical Co. v. Superior Court,* 131 Ariz. 431, 641 P.2d 1275 (1982), our supreme court addressed an issue similar to the one *sub judice.* Here, petitioner claims a vested right arising from case law granting the Industrial Commission discretion to simply *ignore* the bar of the statute of limitations and hear a late claim. In *Chevron* the petitioners claimed that the right to *raise* a one year statute of limitations defense is a vested property right within the protection of the fourteenth amendment. They argued that the amendments to A.R.S. § 23–1023, which retroactively permitted the reassignment of unliquidated tort claims, constituted a taking of their right to raise a statute of limitations defense in violation of the fifth amendment. Petitioners in *Chevron* argued that the amendments to A.R.S. § 23–1023 not only extended the time within which a claimant could maintain a cause of action, but also increased the extent of their liability by exposing them to liability for general damages by reassignments in cases which, prior to the amended statute, they did not have. The supreme court disagreed, and upheld the retroactivity of the statutory amendments, saying:

We do not believe, however, that the right to raise a one year statute of limitations defense instead of a two year statute of limitations defense is a vested property right within the protection of the Fourteenth Amendment even if the result may be increased liability on the part of the defendant.

131 Ariz. at 438, 641 P.2d at 1282.

In *Starks v. S.E. Rykoff & Co.,* 673 F.2d 1106 (9th Cir.1982), the Ninth Circuit, ad-

dressing the same due process issue, approved the *Chevron* decision, and cited the United States Supreme Court decision of *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945) for the proposition that

> [t]he shelter of a statute of limitations has never been regarded as a fundamental right, and the lapse of a statute of limitations does not endow a citizen with a vested property right in immunity from suit.

673 F.2d at 1109. The court concluded by noting "the general rule that statutes of limitation go to matters of remedy only." *Id.*

This court recently held that the same provision in controversy in *Chevron* and *Starks*, the retroactive provision of the amendments to A.R.S. § 23-1023, "only goes to matters of remedy in restoring a barred claim," and that the right to assert the one year limitation statute of A.R.S. § 23-1023 "is purely procedural in nature." *Stirewalt v. P.P.G. Industries, Inc.*, 138 Ariz. 257, 674 P.2d 320 (App.1983).

■ We find the above cited cases persuasive. While they involved a retroactive provision that operated to *revive* previously barred claims, the retroactive application *sub judice* would most likely operate to destroy what previously may have been a claim of continued vitality. In both instances, however, the cases dealt with the procedural nature of the statute of limitations and vested rights: in the former, petitioners claimed a vested right in asserting the statute as a defense; in the latter, petitioner claims a vested right in having the statute's bar set aside. We believe that the distinction between a "vested right" for purposes of formal constitutional due process jurisprudence and one for the less formal purpose of determining a statute's retroactivity to be nominal. We find that amended A.R.S. § 23-1061(A), like amended A.R.S. § 23-1023, "only goes to matters of remedy" and that the right to have an untimely claim heard despite the statute's bar "is purely procedural in nature." *Stirewalt, supra; Holler v. Indus-*

*trial Commission,* 140 Ariz. 148, 680 P.2d 1209, 1213 (App.1983), *aff'd in part* and *vacated in part,* 140 Ariz. 142, 680 P.2d 1203 (1984). We therefore hold that the amendments to A.R.S. § 23-1061(A) were properly applied to this case by the administrative law judge.

## II. WAS THE EVIDENCE SUFFICIENT

We must now determine whether the statutory exception to the one year statute of limitations can operate to excuse petitioner's late filing. The statute, as amended, provides in pertinent part:

> [N]either the commission nor any court shall have jurisdiction to consider a claim which is not timely filed under this subsection, except if the employee or other party entitled to file the claim has delayed in doing so because of justifiable reliance on a material representation by the commission, employer or insurance carrier or if the employee or other party entitled to file the claim is *insane or legally incompetent or incapacitated* at the time the injury occurs or the right to compensation accrues or during the one-year period thereafter. If the insanity or legal incompetence or incapacity occurs after the one-year period has commenced, the running of the remainder of the one-year period shall be *suspended* during the period of insanity or legal incompetence or incapacity. If the employee or other party is insane or legally incompetent or incapacitated when the injury occurs or the right to compensation accrues, the one-year period commences to run immediately upon the termination of insanity or legal incompetence or incapacity. (Emphasis added).

Petitioner argues that her physical and psychological problems resulting from the industrial injury rendered her "incapacitated" within the meaning of A.R.S. § 23-1061(A), and that therefore her late filing should be excused.

■ We first address the proper meaning of the term "incapacitated" as used in A.R.S. § 23-1061(A), remembering that the

cardinal rule of statutory construction is to give effect to the legislature's intent. *State v. Fendler,* 127 Ariz. 464, 622 P.2d 23 (App.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981). We note also that when a term is not specifically defined by the statute, it must be given its ordinary meaning, and its definition must be sufficiently clear to be easily understood by the common man. A.R.S. § 1–213; *State v. Limpus,* 128 Ariz. 371, 625 P.2d 960 (App.1981).

■ What did the legislature intend by using the term "incapacitated" ? [1] We believe that the legislature envisioned a situation where an individual would have a diminished mental or physical capacity to the extent of being *unable* to file a claim. This comports with the definition of "incapacitated person" at A.R.S. § 14–5101 which reads:

> [A]ny person who is impaired by reason of mental illness, mental deficiency, mental disorder, physical illness or disability, advanced age, chronic use of drugs, chronic intoxication or other cause, except minority, to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person.[2]

Since the legislature expressly provided for tolling of the limitations statute during periods of incapacity, we believe our interpretation is consistent with both the legislature's intent and the term's plain meaning.

■ While petitioner urges a liberal construction of the statute to accommodate the purposes of the worker's compensation laws, we point out that where a statute's language is plain we must observe that plain meaning and are not free to extend that meaning even though the result may be harsh or uncompassionate in a particular case. *Members of Bd. of Ed. of Pearce U.H.S. Dist. v. Leslie,* 112 Ariz. 463, 543 P.2d 775 (1975); *Padilla v. Industrial Commission,* 113 Ariz. 104, 546 P.2d 1135 (1976). We further observe that the legislature intended to cut down on late filed claims in order to attract employers to the state, *see* footnote 1, and not to increase the number of late claims filed.

We next address whether the administrative law judge correctly applied the law to the facts when he concluded that "[t]here is insufficient evidence that the applicant was insane, legally incompetent or incapacitated at the time the injury occurred and became manifest, or at any time during the one-year period thereafter." The administrative law judge's conclusions based on the weight of the evidence will not be disturbed on appeal, and we must consider the evidence in the light most favorable to sustaining the award. *In re Estate of Bedwell,* 104 Ariz. 443, 454 P.2d 985 (1969).

The record shows that two board-certified psychiatrists testified regarding petitioner's capacity to timely file her worker's compensation claim. They stated that petitioner was capable of managing her own personal affairs, but that her depression had caused her to lose interest in the outside world and had dulled her perception of calendar time. She was less aggressive and effective than normal and thus less likely to vigorously pursue her worker's compensation claim. When posed with a hypothetical encompassing facts similar to those *sub judice,* the doctors testified that there were no definite answers as to whether petitioner was "incapacitated" so as to prevent her from filing on time. Evidence was also presented that petitioner had consulted lawyers and timely filed a

---

**1.** No case law has addressed the term within the context of A.R.S. § 23–1061(A), nor were conference minutes made of Senate Bill 1001, which amended A.R.S. § 23–1061(A). *See* Laws 1980, ch. 246, § 34. The committee minutes state that the amendments "are an effort to obtain some cost containment measure" to make Arizona more attractive to employers, and that one of the substantive changes to effect that end was "setting time limits on filing of claims." 34th Leg., 2nd regular session, minutes of Committee on Commerce and Labor, February 7, 1980, p. 3.

**2.** See also A.R.S. § 36–2021 defining "incapacitated by alcohol" for similar import. Webster defines it as "to deprive of capacity or natural power ... to make legally incapable or ineligible." *Webster's New Collegiate Dictionary* (1976).

civil action on her own behalf during this period of time.

We find that whether petitioner's depression rose to a level that rendered her incapable of making responsible decisions within the limitations period was a question of fact for the administrative law judge to resolve, and on the state of this record we shall not disturb his assessment of the evidence. *In re Estate of Bedwell, supra.* We conclude that the administrative law judge did accord the term "incapacitated" its plain meaning and heard sufficient testimony regarding the petitioner's condition to support his conclusions, and that the record supports the award.

For the above reasons, the award is affirmed.

GRANT and HAIRE, JJ., concur.