20 P.3d 1077 (2001)
2001 WY 35
In the Matter of the Worker's Compensation Claim of Myron J. COLLICOTT, an Employee of Rocky Mountain Fiber.
Myron J. Collicott, Appellant (Petitioner),
v.
State of Wyoming ex rel. Wyoming Workers' Safety and Compensation Division, Appellee (Respondent).
No. 00-171.
Supreme Court of Wyoming.
April 4, 2001.
*1078 Representing Appellant: Mark E. Macy of Macy Law Office, P.C., Cheyenne, WY.
Representing Appellee: Gay Woodhouse, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald L. Laska, Senior Assistant Attorney General; and David L. Delicath, Assistant Attorney General.
Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.
KITE, Justice.
[¶ 1] Appellant Myron J. Collicott was denied worker's compensation benefits after the hearing examiner found he had filed an untimely report of injury. Specifically, the hearing examiner determined Mr. Collicott failed to prove the statute of limitations for filing a claim for worker's compensation benefits pursuant to Wyo. Stat. Ann. § 27-14-505 (LEXIS 1999) should be tolled due to mental incompetence. We hold the hearing examiner did not properly utilize the applicable law to determine mental incompetence. We reverse the Order Denying Benefits and remand for reconsideration.

ISSUE
[¶ 2] Mr. Collicott presented the following issue for our review:
1. Whether the decision of the Office of Administrative Hearings ruling that the Appellant was not mentally incompetent for the purpose of tolling the statute of limitations as provided by Wyo. Stat. Ann. § 27-14-505 (1986) was unsupported by substantial evidence and arbitrary, capricious or an abuse of discretion.
Appellee State of Wyoming ex rel. Wyoming Workers' Safety and Compensation Division (the Division) restated the issue as follows:
Did the Hearing Examiner correctly determine that Appellant failed to prove mental incompetence pursuant to Wyo. Stat. Ann. § 27-14-505?

FACTS
[¶ 3] On July 7, 1999, Mr. Collicott filed a report of injury with the Division reporting a work-related shoulder injury that occurred almost ten years earlier on October 7, 1989. The Division denied benefits on July 16, 1999, as untimely. On July 19, 1999, Mr. Collicott objected to the Division's determination and requested a hearing in writing. Thereafter, the case was referred to the Office of Administrative Hearings pursuant to Wyo. Stat. Ann. § 27-14-601(k)(v) (LEXIS 1999). Mr. Collicott stipulated that the report of injury was not timely filed but claimed the limitation period was tolled because he was mentally incompetent pursuant to § 27-14-505. A hearing was held on January 13, 2000. The record firmly establishes that Mr. Collicott has long suffered from schizophrenia, initially diagnosed at age thirteen, and has been continually treated for the mental disorder since the initial diagnosis. Mr. Collicott testified that he had received a psychological discharge from the army. He has also been on social security disability since the early 1980s on the basis of his mental disorder. The Social Security Administration considered Mr. Collicott disabled and therefore eligible for social security income after applying the applicable standard which was whether he had the ability to understand, carry out, and remember instructions and to respond appropriately to supervision, co-workers, and work pressures in a work setting. However, Mr. Collicott testified he did not have a guardian or a conservator appointed for him and most of the time he was in control of his own finances. The hearing examiner issued the Order Denying Benefits on February 10, *1079 2000, and concluded Mr. Collicott had not met his burden of proving mental incompetence pursuant to § 27-14-505. A petition for review was filed which the district court certified to this court pursuant to W.R.A.P. 12.09(b).

STANDARD OF REVIEW
[¶ 4] An administrative agency's decision certified directly to this court is reviewed under the same appellate standards applicable to the reviewing court of the first instance. Wesaw v. Quality Maintenance, 2001 WY 17, ¶ 8, 19 P.3d 500, at ¶ 8 (Wyo.2001). Our judicial review is limited to those considerations specified in Wyo. Stat. Ann. § 16-3-114(c) (LEXIS 1999) which provides in pertinent part:
(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
...
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
...
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
The interpretation and correct application of the provisions of the Wyoming Worker's Compensation Act are a question of law over which our review authority is plenary. Wesaw, ¶ 8. Conclusions of law made by an administrative agency are affirmed only if they are in accord with the law. Corman v. State ex rel. Wyoming Workers' Compensation Division, 909 P.2d 966, 970 (Wyo.1996). We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law. DeLauter v. State ex rel. Wyoming Workers' Compensation Division, 994 P.2d 934, 936 (Wyo.2000).

DISCUSSION
[¶ 5] Section 27-14-505 is silent as to what comprises mental incompetency sufficient to toll the timely filing requirements. Section 27-14-505 provides:
If an injured employee is mentally in-competent or a minor, or where death results from the injury and any of his dependents are mentally incompetent or minors, at the time when any right or privilege accrues under this act, no limitation of time provided for in this act shall run so long as the mentally incompetent or minor has no guardian.
The hearing examiner noted there was no definition of "mentally incompetent" in the Wyoming Worker's Compensation Act nor were there any cases which interpreted this term. Therefore, this case presents an issue of first impression. As a result of the lack of statutory guidance, the hearing examiner applied the term of a "mentally incompetent person" as defined in Wyo. Stat. Ann. § 3-1-101(a)(xii) (LEXIS 1999) which is a statute that deals with guardianship and states in pertinent part: "`Mentally incompetent person' means an individual who is unable unassisted to properly manage and take care of himself or his property as the result of mental illness, mental deficiency or mental retardation." The hearing examiner stated that § 3-1-101(a)(xii) "appears to be a reasonable example of what the legislature meant when `mentally incompetent' was used in the worker's compensation statutes." The hearing examiner determined Mr. Collicott failed to establish that he was a person who is "mentally incompetent" pursuant to the definition provided in the guardianship statute. Specifically, the hearing examiner reasoned:
The evidence establishes that Collicott does suffer from schizophrenia, a mental illness which has been diagnosed by Dr. Merrell and other competent professionals. He has been treated for this illness for a *1080 number of years and has periodically been hospitalized for the condition. However, there have been extensive periods of time, after the alleged injury date, when Collicott was capable of properly managing and taking care of himself and his property without assistance. Collicott has his own apartment, buys his own food, seeks medical treatment, timely prepared paperwork to retain his SSD benefits and sought various benefits through the VA. Additionally, Collicott went to the workers' compensation office seeking benefits in 1997 and asked about filing a report, but did nothing further. Benefits are, therefore, denied.
[¶ 6] Mr. Collicott claims the legislature did not intend the definition of "mentally incompetent" provided in the guardianship statute to apply in the context of a worker's compensation case or such definition would be explicitly set forth in the definitions in Wyo. Stat. Ann. § 27-14-102 (LEXIS 1999). Rather, Mr. Collicott contends the definition of "mentally incompetent" was intended to be interpreted on a case-by-case basis. He maintains the adoption of the definition from the guardianship statute in this case was improper and presumes that an incompetent person must be appointed a guardian to manage the person's daily living affairs and finances, unlike the standard used for determining a disability by the Social Security Administration. Consequently, Mr. Collicott contends the hearing examiner's decision was not supported by substantial evidence and was arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with the law.
[¶ 7] The crux of the issue is whether an individual suffering from a diagnosed mental disorder, and assertedly incapable of following statutory procedures, may claim the statute of limitations is tolled based on his mental incompetence. As a result of the statute's failure to provide a definition of what constitutes mental incompetence, we must discern in what circumstances the legislature intended the filing requirements to be tolled. State ex rel. Wyoming Workers' Compensation Division v. Gerdes, 951 P.2d 1170, 1174 (Wyo. 1997). Our method of statutory construction has been fully explained:
We read the text of the statute and pay attention to its internal structure and the functional relation between the parts and the whole.... If an ambiguous statute has been construed by an agency charged with administering it, we will accord deference to, but are not bound by, that construction. After all, the final construction of an ambiguous statute is a question for the court.
Parker Land and Cattle Company v. Wyoming Game and Fish Commission, 845 P.2d 1040, 1045 (Wyo.1993).
[¶ 8] Following a similar analysis set forth in Gerdes, 951 P.2d at 1174, we examine the Wyoming Worker's Compensation Act as a whole, looking at its purposes as well as the underlying policy considerations. We conclude the definition provided in the guardianship statute which provides a person must be unable unassisted to properly manage and take care of himself or his property, while not conclusively incorrect, must be further refined to fit within the context of worker's compensation claims. Some guidance can be gleaned from the general purposes behind the Wyoming Worker's Compensation Act, legislative intent, and the interpretation of similar statutes by other state courts.
[¶ 9] It is a basic rule of statutory construction that courts may try to determine legislative intent by considering the type of statute being interpreted and what the legislature intended by the language used, viewed in light of the objects and purposes to be accomplished. State v. Stovall, 648 P.2d 543, 546-47 (Wyo.1982). Furthermore, when we are confronted with two possible but conflicting conclusions, we will choose the one most logically designed to cure the mischief or inequity that the legislature was attempting to accomplish. 648 P.2d at 546. When the Wyoming Worker's Compensation Act is read as a whole, it clearly supports only one logical interpretation of the language used. We hold the mental incompetence provision was intended to toll the statute of limitations for those individuals whose medically diagnosed mental condition is so severe as to render them unable to protect their legal right to compensation by following the statutory procedures provided in the Wyoming Worker's Compensation Act. *1081 We believe our interpretation is consistent with both the legislature's intent and the plain meaning of "mental incompetence" within the context of worker's compensation. The definition used by the Division and the Office of Administrative Hearings equates an individual's ability, in a routine manner, to properly manage and take care of himself or his property to an ability to comprehend the import and the requirements of worker's compensation statutory procedures. In applying our interpretation, we suggest these questions are posed: Does an individual with a medically diagnosed mental condition have the ability to comprehend that an injury is compensable? Furthermore, can that individual comprehend that certain statutory guidelines must be complied with in order to receive benefits? An individual's mere ignorance of the statutory procedures for filing a claim would not result in tolling the statute.
[¶ 10] We turn for guidance to the interpretations by other states of their statutes which likewise lack definitions of key terms. Ariz.Rev.Stat. Ann. § 23-1061(A) (West 1995) is comparable to § 27-14-505 and states in pertinent part:
[N]either the commission nor any court shall have jurisdiction to consider a claim which is not timely filed under this subsection, except if the employee or other party entitled to file the claim has delayed in doing so because of justifiable reliance on a material representation by the commission, employer or insurance carrier or if the employee or other party entitled to file the claim is insane or legally incompetent or incapacitated at the time the injury occurs or the right to compensation accrues or during the one-year period thereafter.
In Harrelson v. Industrial Commission of Arizona, 144 Ariz. 369, 697 P.2d 1119 (App.1984), the Court of Appeals of Arizona was faced with determining the meaning of "incapacitated" in the absence of a definition. The claimant sought to have her untimely worker's compensation claim excused due to her depression. 697 P.2d at 1125. The court concluded the legislature envisioned a situation where an individual would have a diminished mental or physical capacity to the extent of being unable to file a claim. 697 P.2d at 1124. The court's interpretation was based on both the legislature's intent and the term's plain meaning.
[¶ 11] Additionally, in Cerami v. City of Rochester School District, 82 N.Y.2d 809, 604 N.Y.S.2d 543, 624 N.E.2d 680 (1993), the claimant filed an untimely worker's compensation claim for a mental breakdown allegedly precipitated by stressful working conditions. The Court of Appeals of New York was required to construe the provision "any person who is mentally incompetent or a minor so long as he has no committee or guardian" to determine if the filing provision was tolled. 604 N.Y.S.2d 543, 624 N.E.2d at 681. The court applied the holding of the seminal case, McCarthy v. Volkswagen of America, Inc., 55 N.Y.2d 543, 450 N.Y.S.2d 457, 435 N.E.2d 1072 (1982), which had previously construed the meaning of insanity as it applied to a personal injury statute that provided a toll for insanity. See N.Y. C.P.L.R. 208 (McKinney 1990). McCarthy held, "the Legislature meant to extend the toll for insanity to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society." 435 N.E.2d at 1075.
[¶ 12] These courts provided definitions, in light of statutory silence, which comported with the legislative intent and statutory construction of the pertinent statutes at issue. We have undertaken the same task to reach a definition which comports with the framework of the Wyoming Worker's Compensation Act.
[¶ 13] We must address the common law rule of "liberal construction" which both parties agreed applies in this case. As we explained in Wright v. State ex rel. Wyoming Workers' Safety and Compensation Division, 952 P.2d 209, 212 n. 1 (Wyo.1998), in 1994 an amendment to the Wyoming Worker's Compensation Act was adopted by the legislature with the apparent purpose of rejecting the rule of liberal construction. The statute now provides in pertinent part:
(b) ... It is the specific intent of the legislature that benefit claims cases be decided on their merits and that the common law rule of "liberal construction" based on the supposed "remedial" basis of workers' *1082 benefits legislation shall not apply in these cases.
Wyo. Stat. Ann. § 27-14-101(b) (LEXIS 1999). However, that statutory provision is not applicable in this instance because a claim for benefits pursuant to the Wyoming Worker's Compensation Act is controlled by the laws in effect at the time of the injury. Wright, 952 P.2d at 212 n. 1. Neither party disputes that the earlier rule of construction is applicable in this instance as Mr. Collicott's injury occurred in 1989 and the rule of "liberal construction" was not eliminated until 1994. As we explained in Wilkinson v. State ex rel. Wyoming Workers' Safety and Compensation Division, 991 P.2d 1228, 1242 (Wyo.1999), the rule of liberal construction of a statute in favor of the claimant is applied when the statute at issue is silent as to the issue presented and precedes the legislature's 1994 amendment to the preamble of the worker's compensation statutes. Therefore, our statutory construction in this case "should be accomplished to afford coverage wherever that end may be achieved without unreasonably extending the clear language of the statute." Wright, 952 P.2d at 211. Subsequent to the effective date of the current statute, worker's compensation statutes can no longer be interpreted in favor of coverage but will be interpreted in a way that gives effect to the legislative intent and preserves the historic compromise between workers and employers. State ex rel. Wyoming Workers' Safety and Compensation Division v. Summers, 987 P.2d 153, 157 (Wyo.1999). Our conclusion in this case would be the same whether it is determined on the basis of liberal construction or to effectuate legislative intent.
[¶ 14] Whether an individual's mental condition meets the definition of mental competence as set forth herein is a factual question. We note that Mr. Collicott's doctor was asked in his deposition whether Mr. Collicott could follow through in a course of action under an obligation to report an injury to his employer and then file a report of injury. He stated, "My best opinion on this would probably be the fact that Myron does have substantial difficulty with understanding the basic requirements of a job and being able to think through requirements of needing to report injuries at work." This evidence was consistent with the findings of the Social Security Administration. Because the evidence was presented and considered according to an incorrect standard, we remand for further hearing and factual findings under the proper standard.
[¶ 15] Reversed and remanded.