2002 WY 15

**Edward Gerald KIMSEY, Appellant (Petitioner),**

**v.**

**The WYOMING DEPARTMENT OF TRANSPORTATION, Appellee (Respondent).**

No. 00–177.

Supreme Court of Wyoming.

Jan. 30, 2002.

George L. Simonton of Simonton & Simonton, Cody, WY, Representing Appellant.

Gay Woodhouse, Attorney General; Dennis M. Coll, Senior Assistant Attorney General; and Mary L. Loos, Assistant Attorney General, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

LEHMAN, Chief Justice.

[¶ 1] Appellant Edward Gerald Kimsey appeals from the Office of Administrative Hearing's (OAH) order, which upheld the appellee Wyoming Department of Transportation's (WYDOT) implied consent suspension of Kimsey's driver's license for a six-month period.

[¶ 2] We affirm.

### ISSUES

[¶ 3] Kimsey submits the following issues for our analysis:

1. Was the Administrative Hearing Officer's finding "that there existed probable cause to believe Licensee had been driving or was in actual physical control of a motor vehicle upon a public street or highway in this state in violation of Wyo. Stat. § 31–5–233(b) (1995)" supported by substantial evidence?

2. Was the Administrative Hearing Officer's finding that "Licensee refused to submit to all required chemical tests" supported by substantial evidence?

3. Was the Administrative Hearing Officer's denial of Motion for New Trial And/Or Relief From Judgment an abuse of discretion?

### FACTS

[¶ 4] After a night out drinking, Kimsey arrived home in the early morning hours of February 27, 2000, to find a message on his answering machine informing him that his wife had been arrested and was being detained at the Cody Law Enforcement Center (Law Center). Kimsey called the Law Center to inquire about his wife, and the dispatcher told him that his wife had indeed been arrested and that she would have to spend the night in jail. The dispatcher

transferred Kimsey's call to Officer Schwindt who advised Kimsey that his wife had been arrested for driving while under the influence of alcohol, that he could not speak to her over the telephone or personally, and that she would not be released until later in the day. Both the dispatcher and Officer Schwindt believed Kimsey to be intoxicated based on their conversations with him on the telephone.

[¶ 5] Just a few minutes after this telephone conversation ended, Kimsey showed up at the Law Center. He picked up an in-house telephone and waited for several minutes without ever trying to dial a number. When he finally hung up the telephone, the dispatcher called him to find out who he was and what he wanted. Kimsey identified himself and asked about his wife. The dispatcher asked Officers Melson and Johnson to speak with Kimsey because she believed he was intoxicated.

[¶ 6] Officer Johnson had exited the building just moments before Kimsey arrived at the Law Center. Upon receiving the request from the dispatcher, Officer Johnson returned to the building and noticed a Dodge truck that was not there when he left just moments before and was now parked in front of the building. Officer Johnson ran a registration check on the vehicle and discovered that it belonged to Kimsey and his wife. Officer Johnson approached Kimsey and asked him if the Dodge truck was his. Kimsey said that it was. When Officer Johnson asked Kimsey how he had gotten to the Law Center, Kimsey told him that he had driven his vehicle and added "but I'm O.K." Officer Johnson asked Kimsey if he had been drinking. Kimsey said that he had been drinking a little and again indicated that he was all right to drive.

[¶ 7] Officer Johnson proceeded to explain the circumstances surrounding Kimsey's wife's arrest. Officer Melson arrived and joined the conversation. The dispatcher was stationed just a few feet away and overheard the entire exchange.

[¶ 8] During this discussion, Officer Johnson noticed that Kimsey's speech was slurred, he was unsteady on his feet, and he smelled strongly of alcohol. When Johnson told Kimsey that he thought he was too intoxicated to be driving, Kimsey assured Johnson that he was "O.K." Officer Johnson asked Kimsey to perform sobriety tests. Kimsey declined and stated he just wanted to get his wife and they would walk home. When Officer Johnson persisted with his request, Kimsey said that he did not drive to the Law Center. Officer Johnson asked how his truck got to the Law Center, and Kimsey initially answered that he did not know. He then stated that maybe his wife had driven it there. Officer Johnson again asked Kimsey to perform sobriety tests, and Kimsey again refused.

[¶ 9] Officer Johnson informed Kimsey he was under arrest for driving while under the influence of alcohol, handcuffed him, and escorted him to the jail. Officer Johnson read Kimsey the implied consent advisement and asked Kimsey to take a breathalyzer test, which Kimsey refused. Kimsey was remanded to the custody of the jail. He was again asked to take the test after he had been booked, and again he refused. The detention officer explained to Kimsey that he would not be released until a breathalyzer test read zero and placed Kimsey into the intoxication room.

[¶ 10] Kimsey did not reach a zero alcohol level until 7:00 p.m., approximately seventeen hours after being arrested. As Kimsey was being released, he signed a document stating that he had initially refused to submit to chemical testing. He claims he did not understand that he was signing a refusal to submit to chemical testing form and that he did so only so that he could be released from jail.

[¶ 11] The OAH heard the matter and upheld the implied consent suspension. Kimsey filed a Motion for New Trial and/or Relief from Judgment, which the OAH denied. Kimsey then petitioned the district court for review of the OAH's order, and the district court certified the case to this court pursuant to W.R.A.P. 12.09(b).

### STANDARD OF REVIEW

[¶ 12] When the district court certifies an administrative agency's decision di-

rectly to this court, we review that agency decision under the same appellate standards applicable to the reviewing court of the first instance. *Wesaw v. Quality Maintenance*, 2001 WY 17, ¶ 8, 19 P.3d 500, ¶ 8 (Wyo.2001). Our judicial review is limited to those considerations specified in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2001), which provides:

> To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> * * *
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> * * *
>
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 13] In reviewing findings of fact, we examine the entire record to determine if there is substantial evidence to support an agency's findings. *Wesaw*, ¶ 9. If the agency's findings are supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. *Id.* Substantial evidence is relevant evidence that a reasonable mind might accept in support of the conclusions of the agency. It is more than a scintilla of evidence. *Id.*

[¶ 14] Conclusions of law made by an administrative agency are affirmed only if they are in accord with the law. *Collicott v. State ex rel. Workers' Safety & Compensation Div.*, 2001 WY 35, ¶ 4, 20 P.3d 1077, ¶ 4 (Wyo.2001). We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law. *Id.*

## DISCUSSION

### A. Probable Cause

[¶ 15] Kimsey contends that Officer Johnson lacked probable cause to arrest him for driving while under the influence because no one saw Kimsey actually driving his vehicle. WYDOT counters that Officer Johnson had reasonable grounds to believe that Kimsey drove his vehicle while intoxicated, giving him probable cause to arrest him.

[¶ 16] The party who challenges whether the agency's decision was supported by sufficient evidence bears the burden of showing that it was not supported by such evidence. *Smith v. State ex rel. Dep't of Transp.*, 11 P.3d 931, 937 (Wyo.2000). A police officer may arrest a person without a warrant if at the time of the arrest he possesses probable cause to believe that the person has committed a crime. *Jandro v. State*, 781 P.2d 512, 517 (Wyo.1989). Probable cause exists when, given the totality of the circumstances, a prudent, reasonable, and cautious police officer is led to believe a crime has been committed by the person who is being arrested. *Smith*, 11 P.3d at 937. Probable cause by definition involves probabilities rather than certainties. *Id.*

[¶ 17] After analyzing the totality of the circumstances that led up to Kimsey's arrest, we hold that Officer Johnson possessed adequate probable cause to arrest Kimsey for driving while under the influence of alcohol. It took only a few minutes for Kimsey to arrive at the Law Center after he called to inquire about the condition of his wife. Officer Johnson left the building just before Kimsey arrived, and when he returned to speak with Kimsey, he noticed the vehicle in the parking lot. When Officer Johnson asked Kimsey about the truck, Kimsey admitted that it was his and that he had driven it to the Law Center, assuring Officer Johnson that he was okay to drive. Officer Johnson told Kimsey that he thought Kimsey was too intoxicated to be driving, and Kimsey again assured Officer Johnson that he was all right to drive. When Officer Johnson asked

Kimsey to perform some field sobriety tests, Kimsey asked if he could just collect his wife and promised to walk home. Officer Johnson again requested Kimsey perform sobriety tests, and Kimsey replied that he did not drive the vehicle to the Law Center and that he did not know how it got there. Kimsey next gave the explanation that maybe his wife had driven the vehicle to the Law Center.

[¶ 18] Given the confusing nature of Kimsey's statements, along with his slurred speech, instability, and the strong odor of alcohol, Officer Johnson concluded that Kimsey was intoxicated. This conclusion, coupled with the presence of Kimsey's vehicle in the parking lot, encompass the reasonable conclusion that Kimsey was intoxicated and that he had driven his vehicle to the Law Center to check on his wife.

[¶ 19] Kimsey asserts to this court that when he told Officer Johnson he drove to the Law Center, he meant he had received a ride to the Law Center. We find it peculiar that Kimsey neither offered this excuse to any of the officers on the night he was arrested, nor did he present any evidence at the hearing regarding the identity of the individual he claims gave him the ride.

[¶ 20] We hold that the totality of the circumstances were adequate to cause a reasonable police officer to believe Kimsey had driven while under the influence of alcohol even though no one actually saw him driving the vehicle. Officer Johnson, therefore, possessed adequate probable cause to arrest Kimsey for driving while under the influence of alcohol.

**B. Chemical Tests**

[¶ 21] Kimsey next contends that the hearing examiner's finding that he refused to submit to all required chemical tests was not supported by substantial evidence. He asserts that he did submit to the required tests and that the officers on duty that night banded together to fabricate their own official story of what transpired. WYDOT replies that Kimsey initially refused to take a breathalyzer test, but did later take several so that the officers could determine when Kimsey could be released from jail.

[¶ 22] To support his argument, Kimsey claims that the detention officer advised that he had blown approximately a .17. He maintains that this evidence corroborates that he did take a test. He also insists that a .17 reading is more consistent with having been tested soon after he got there than after spending seventeen hours in jail.

[¶ 23] This court has adopted a bright line rule that states once a driver refuses to take a test, any subsequent attempt to rescind or cure that refusal is ineffective against the legal consequences of the initial refusal for the purposes of Wyo. Stat. Ann. § 31-6-102(d) (LexisNexis 2001). *Farmer v. State, Dep't of Transp.*, 986 P.2d 165, 167–68 (Wyo.1999). We reiterated the policy considerations behind this bright line rule:

Implied consent laws generally have three objectives: "(1) to discourage individuals from driving an automobile while under the influence of intoxicants[;] (2) to remove the driving privileges from those individuals disposed to driving while inebriated[;] and (3) to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication." [*Department of Licensing v. Lax*, 125 Wash.2d 818, 888 P.2d 1190, 1193 (1995) ] (citing *Nowell v. Department of Motor Vehicles*, 83 Wash.2d 121, 516 P.2d 205 (1973)).

*Id.* at 167.

[¶ 24] The fundamental flaw with Kimsey's argument is that he fails to present any evidence to establish that he immediately took a breathalyzer test upon request. It is undisputed that he did ultimately take several breathalyzer tests, but it is impossible to tell when Kimsey's witnesses might have heard this conversation.

[¶ 25] We are not persuaded by Kimsey's attempt to convince us that he complied with this rule by arguing that a .17 reading lends itself more to a conclusion that he took the test right away. All that reading showed was that Kimsey had a substantial amount of alcohol in his system at the time it was taken. It has absolutely no value in proving the timing of the test or whether Kimsey initially refused to take it. We hold that the hearing

examiner's decision was supported by substantial evidence.

### C. *Motion for New Trial And/Or Relief From Judgment*

[¶ 26] Kimsey finally asserts that the hearing examiner abused his discretion when he denied Kimsey's Motion for New Trial And/Or Relief From Judgment. In his argument on this issue, Kimsey claims that newly discovered evidence corroborates that he took a breathalyzer test immediately upon being arrested. He maintains that two inmates who were incarcerated with his wife heard a conversation between the detention officer and Kimsey's wife indicating that her husband had been put in jail and that he had blown a .179. Kimsey offers affidavits from the two witnesses to this effect.

[¶ 27] The affidavits from these witnesses fail to establish when the test result was obtained. The witnesses were not privy to any discussions among Kimsey and the officers, and their statements in no way prove that Kimsey did not initially refuse to take a breathalyzer test. We agree with the hearing examiner's observation that the testimony, even if taken as true, "does not indicate whether or not the test allegedly taken by [Kimsey] was for the jail's internal purposes or whether the test was a test taken pursuant to Wyoming's implied consent law." Accordingly, we hold that the hearing examiner properly denied Kimsey's motion.

[¶ 28] Affirmed.