nated an expert to testify as to the value of the marital estate.

[¶ 33] In her appellate brief, Rino contends that, by granting summary judgment to Sorensen, the district court was, in effect, deciding the fact question of whether the information in the compiled financial statement was misleading. That is not the case. Whether or not that information was misleading does not matter; the undisputed facts show that Rino knew that Sorensen was not representing the information as being accurate, and Rino did not rely on its accuracy. In other words, the accuracy of the information was not a material fact as it relates to the summary judgment motion.

[¶ 34] The district court was correct in granting Sorensen's motion for summary judgment. There are no genuine issues of material fact and Sorensen is entitled to judgment as a matter of law. Sorensen's expert established the professional standard of care and gave an opinion based on the undisputed facts that Sorensen did not breach that standard. Rino did not counter those opinions with a contrary expert opinion.

## CONCLUSION

[¶ 35] Summary judgment should not have been granted to attorney Mead because there remain genuine issues of material fact as to Mead's conduct. Because those issues of material fact remain, the burden did not shift to Rino to produce expert testimony to counter Mead's expert. Summary judgment was, however, properly granted to accountant Sorensen because no genuine issues of material fact remain, Sorensen established through expert opinion testimony that he did not breach the professional standard of care, and Rino presented no expert evidence to the contrary.

[¶ 36] The summary judgment in favor of Mead is reversed, the summary judgment in favor of Sorensen is affirmed, and the case is remanded to the district court. Such remand does not include those issues deter-

mined by the district court to be barred by the doctrine of collateral estoppel.

2002 WY 145

**Debra BAILEY, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., Wyoming Workers' Safety and Compensation Division, Appellee (Respondent).**

No. 01–248.

Supreme Court of Wyoming.

Sept. 30, 2002.

Robert Anderson of Robert O. Anderson, P.C., Riverton, WY, Representing Appellant.

Hoke MacMillan, Attorney General; Gerald L. Laska, Senior Assistant Attorney General; and David L. Delicath, Assistant Attorney General, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] This is an appeal from a determination of the State of Wyoming, Office of Administrative Hearings (OAH) denying neck and left knee related worker's compensation benefits. We affirm.

### ISSUES

[¶ 2] Appellant, Debra Bailey (Bailey), sets forth the following issues:

Was the decision of the Administrative Hearings Office arbitrary, capricious, or otherwise unlawful within the meaning of W.S. § 16–3–114(c)(ii)(A) in ruling that Appellant was not eligible for a Temporary Total Disability award?

Was the Office of Administrative Hearings' decision unsupported by substantial evidence in light of the fact that substantial expert evidence existed to support a contrary ruling as required by W.S. § 16–3–114(c)(ii)(E)?

Appellee, State of Wyoming ex rel. Wyoming Worker's Compensation Division (Division), phrases the issue on appeal as:

Whether the Hearing Examiner erred in determining that Appellant failed to prove every element of her claim for benefits for her alleged neck and knee injuries.

### FACTS

[¶ 3] On July 18, 1999, Bailey leaped into the back end of a company pickup truck while working as a flagger/maintainer for S & L Industrial within a construction zone near Marbleton, Wyoming due to an oncoming vehicle.[1] Immediately after this work accident, Bailey felt pain "all over" but most significantly in her right hand. Later that evening and into early the next morning, Bailey felt pain in her neck and experienced a headache. A few days after this incident, Bailey also began feeling pain in her left knee. Subsequently, Bailey received medical care for these injuries and was taken off work. Ultimately, Bailey was required to undergo surgery on the little finger on her right hand and her left knee. Bailey was also scheduled to have surgery on her neck, but this surgery did not then occur because Bailey declined at the last moment. Later, this surgical procedure was completed.

[¶ 4] Prior to the work accident, Bailey had injured her left knee in 1992 requiring surgery. Hardware, which was placed in her knee during this surgery, was never subsequently removed contrary to medical advice. In addition, eighteen years earlier, Bailey injured her neck in Tampa, Florida when the car in which she was riding was rear-ended by another vehicle. Bailey experienced episodic neck pain from 1995 through 1999. In 1995, Bailey had an MRI performed on her neck. Finally, Bailey was involved in anoth-

---

1. For ease, this event will be hereinafter described as the "work accident."

er automobile accident in May of 1999. Bailey's employer was notified prior to her employment that she had pre-existing back and neck problems and had been recently involved in an automobile accident.

[¶ 5]   After hearing, the OAH found that Bailey's little finger injury was a compensable injury. However, the OAH determined that Bailey's neck and left knee injuries were not compensable and denied coverage for those two claims. Bailey sought review of this decision in the district court, which affirmed the decision of the OAH. This appeal followed.

### STANDARD OF REVIEW

[¶ 6]   Our standard of review when reviewing administrative agency action was recently clarified in the case of *Newman v. State ex rel. Workers' Safety and Compensation Div.*, 2002 WY 91, 49 P.3d 163 (Wyo. 2002). In that case, we reiterated that when considering an appeal from a district court's review of agency action, we accord no special deference to the district court's conclusions and review the case as if it had come directly before this court from the administrative agency. *Newman*, at ¶ 7 (citing *French v. Amax Coal West*, 960 P.2d 1023, 1027 (Wyo. 1998)). We further recognized the applicability of Wyo. Stat. Ann. § 16–3–114(c) which provides:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
> (i) Compel agency action unlawfully withheld or unreasonably delayed; and
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
> (B) Contrary to constitutional right, power, privilege or immunity;
> (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
> (D) Without observance of procedure required by law; or
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

*Newman*, at ¶ 9. In addition, we held that this court is required to review the entire record in making its ultimate determination on appeal.[2]   *Newman*, at ¶ 19 and ¶¶ 24–26.

[¶ 7]   Moreover, this court provided clarification in *Newman* of the applicable standard of review for the benefit of litigants, counsel, and district courts. After thorough consideration, this court adopted the reasoning utilized in *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364, 1365 (1988), in instances where both parties submit evidence at the hearing below. Specifically, this court stated:

> On this reasoning, we hold the substantial evidence test is the appropriate standard of review in appeals from WAPA contested case proceedings when factual findings are involved and both parties submit evidence. We further hold, when only the party with the burden of proof submits evidence in the contested case proceeding and that party does not ultimately prevail, the arbitrary or capricious standard governs the judicial review of that agency decision.

*Newman*, at ¶ 22. This standard must be applied regardless of which party appeals from the agency decision.

[¶ 8]   Additionally, we indicated in *Newman*, at ¶ 12 (quoting *State ex rel. Workers' Safety and Compensation Div. v. Jensen*, 2001 WY 51, ¶ 10, 24 P.3d 1133, ¶ 10 (Wyo.

---

2.  In making this holding, this court specifically abrogated previous case law which required this court to review the record in an administrative action by examining only that evidence that favors the prevailing party, allowing every favor-able inference, while omitting consideration of any conflicting evidence. This previously required type of review was aptly characterized by this court as the "prevailing parties' evidence" concept. *Newman*, at ¶ 25.

2001)), that the substantial evidence test to be applied is as follows:

> In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.

[¶ 9] In *State ex rel. Workers' Safety and Compensation Div. v. Garl*, 2001 WY 59, ¶ 9, 26 P.3d 1029, ¶ 9 (Wyo.2001), we further recognized that:

> The interpretation and correct application of the provisions of the Wyoming Worker's Compensation Act are questions of law over which our review authority is plenary. *Collicott [v. State ex rel. Workers' Safety and Compensation Div.,* 2001 WY 35], ¶ 4 [20 P.3d 1077, ¶ 4 (Wyo.2001)]. Conclusions of law made by an administrative agency are affirmed only if they are in accord with the law. *Id.* We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law. *Id.*

[¶ 10] The *de novo* review by this court of the application of law made by the administrative agency is not to be confused with the arbitrary-and-capricious standard of review also enumerated in *Newman. Newman* contemplates that even when the factual findings are found to be sufficient under the substantial evidence test, this court may be required to apply the arbitrary-and-capricious standard as a "safety net" to catch other agency action which prejudiced a party's substantial right to the administrative proceeding or which might be contrary to the other WAPA review standards. A purely demonstrative listing is provided of situations which could warrant the consideration of the arbitrary-and-capricious standard in addition to the substantial evidence test.[3] *Newman*, at ¶ 23. However,

this appeal presents no such unique circumstances. In accord, see *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998).

## DISCUSSION

[¶ 11] Bailey argues that the decision of the OAH is not supported by substantial evidence and that the OAH erred as a matter of law in rendering its determination. Specifically, Bailey asserts that given the testimony of Dr. Hume and evidence that prior to the work accident she was able to perform her work responsibilities, substantial evidence exists to support a ruling that Bailey's knee and neck injuries were compensable under the Wyoming workers' compensation system. Bailey contends that she submitted adequate evidence to meet her burden of proof that the work accident materially aggravated her admitted pre-existing conditions to her knee and neck and that she should have been awarded worker's compensation benefits concerning these injuries.

[¶ 12] In making our review, we apply the substantial evidence test as required by our recent opinion in *Newman* detailed above. This review criteria is applicable in this case because the OAH was required to make factual findings in this instance and both Bailey and the Division submitted evidence at the time of the administrative hearing held before the OAH.

[¶ 13] Review of the entire record discloses that Bailey was injured on July 18, 1999 while working in a construction zone when she was forced to jump into the bed of a company pickup truck by an oncoming vehicle. Immediately after this event, Bailey felt pain "all over" but most particularly in her right hand. Bailey testified that she felt pain in her neck and experienced a headache that evening and into early the next morning. However, Shannon Garrett, one of Bailey's friends and co-workers with whom Bailey had spent the evening of the work accident, testified that the only complaint made by Bailey concerned her right hand and right arm from the bicep to the wrist. Ms. Gar-

---

**3.** "For example, the administrative record may be replete with evidence supporting the decision, and yet the agency may have willfully discounted credible evidence, refused to admit certain testi-

mony or documentary exhibits, or failed to provide findings of fact or conclusions of law." *Newman*, at ¶ 23.

rett further testified that she only recognized that Bailey's hand was "very swollen" during this evening.

[¶ 14] The following morning when she went to work, Bailey reported the work accident to her employer by informing her supervisor, Charlotte Brinkerhoff. Ms. Brinkerhoff testified that, at that time, Bailey only complained about injury to her right hand and that she personally recognized only that Bailey's right hand was swollen. Ms. Brinkerhoff then took Bailey to the local medical clinic to receive medical care.

[¶ 15] Bailey testified at the hearing that when she was examined at the local medical clinic she was primarily concerned with an injury to her right hand. Rich Anderson, the physician's assistant who treated Bailey, testified via deposition and two separate affidavits. Mr. Anderson stated that Bailey chiefly complained to him about injury to her hand and that he did not have any independent recollection of Bailey complaining of any injury to her head, neck, shoulders, back, or knee. Mr. Anderson's notes also only reflected treatment was received by Bailey for her hand. No other complaints or injuries were indicated in these notes. Ms. Brinkerhoff was present during this examination and confirmed the fact that Bailey only complained about injury to her hand.[4]

[¶ 16] Bailey freely admits that she had previously injured her left knee and neck. As indicated above, prior to the work accident Bailey had injured her left knee in 1992 when kicked by a horse. This injury required surgery to her knee and the hardware, which was placed in her knee during surgery, was never removed although recommended by a medical professional.

[¶ 17] Eighteen years before the work accident, Bailey injured her neck in Tampa, Florida when the car in which she was riding was rear-ended by another vehicle. Bailey had also experienced episodic neck pain from 1995 through 1999. In 1995, Bailey had an MRI performed on her neck. Bailey was involved in another automobile accident in May of 1999. This accident resulted in Bailey's head being thrown against the windshield with such force that the windshield was cracked.

[¶ 18] Bailey's medical records admitted at the time of hearing evidence Bailey's previous difficulties with her knee and neck. Treatment notes of Dr. Alvis Forbes concerning his examination of Bailey on August 14, 1995, stated that Bailey complained of pain in her left knee following a tibial plateau fracture of three years ago and experienced catching, grabbing, and pain along the lateral aspect of that knee. These notes also expressed that Bailey had experienced pain in her neck since a car accident several years ago. Dr. Forbes then recommended surgery be performed on the left knee. Dr. Forbes, in an August 28, 1995 treatment notation, also noted that a recent MRI taken of Bailey's neck showed a significant C5–6 disc herniation.

[¶ 19] Bailey later saw Dr. Forbes in January of 1997, for left knee pain when a bale of hay fell on that knee. He then indicated that Bailey had chronic knee pain with a little bone piece off the lateral edge of the lateral condyle. Bailey again saw Dr. Forbes in July 1997, and January of 1998, for neck pain. On each of these occasions, Dr. Forbes stated that Bailey suffered from recurrent neck pain at the C5–6 location concerning a previously experienced relatively large disc herniation. In 1997, Dr. Forbes prescribed a Medrol dosepak for Bailey's neck and, in 1998, scheduled a series of epidural steroid injections to her neck that were never administered to Bailey. Following Bailey's automobile accident of May 1999, Dr. Forbes wrote that Bailey was seeing him in follow-up of her cervical disc problem with increased symptoms of cervical radiculopathy. Again, Dr. Forbes prescribed a Medrol dosepak. On July 9, 1999, just nine days before the work accident, Dr. Forbes again saw Bailey and prescribed another Medrol dosepak.

[¶ 20] Considerable medical testimony was also presented at the time of the hearing through previously recorded depositions. Dr. Peter Rork of Orthopaedics of Jackson Hole testified that Bailey did not tell him

---

4. Bailey explained this fact at hearing by claiming that she had already decided to visit Orthopaedics of Jackson Hole, where she had previously sought medical care with respect to those complaints unrelated to her hand.

about any recent knee injury but rather related to him that the injury occurred eight years ago. Dr. Rork also indicated that he could not give an opinion about whether the events that occurred during the work accident caused or contributed to the condition of Bailey's knee. However, it was Dr. Rork's impression that the degenerative changes noted during the 1997 surgery to Bailey's knee stemmed from her 1992 fracture of the knee.

[¶ 21] Dr. James Champa of Orthopaedics of Jackson Hole testified that Bailey's C5–6 herniation pre-existed the work accident and that he had no opinion about the cause of this herniation. Dr. Geoffrey Skene also of Orthopaedics of Jackson Hole testified that comparison of the MRI reports of 1995 and 1999 showed little difference, if any, in Bailey's neck condition. Dr. Skene could also not offer an opinion about the cause of Bailey's herniated disk. Further, Bailey admitted that in 1994 she had applied for social security disability benefits related to the difficulties she experienced with her knee and neck.

[¶ 22] Bailey relies heavily on the testimony of Dr. Mary Hume of Orthopaedics of Jackson Hole in support of her contention that her neck injuries were compensable. However, although Dr. Hume testified that the work accident could have been an event that may have caused a significant inflammatory response wherein Bailey went from sporadic pain to constant pain, she recognized that comparison of the 1995 and 1999 MRIs showed that the herniation in Bailey's neck had not changed and that there were any number of things including, but not limited to, a car accident or any other "jarring activity" that could have also caused such a significant inflammatory response. Dr. Hume was unable to determine between the 1999 automobile accident and the work accident which was the more likely event to have exacerbated Bailey's neck condition. The only thing that Dr. Hume could state with certainty was that Bailey's medical conditions were caused by some sort of trauma with uncertain etiology. Therefore, we do not find Dr. Hume's testimony as conclusive as proffered by Bailey.

[¶ 23] The record does reflect evidence contrary to the ultimate decision made by the OAH. For instance, Bailey testified that the symptoms she experienced after the work accident were different than those symptoms that she had experienced previous to that event. She further testified at length that although she experienced difficulty with her knee and neck for an extended period prior to the work accident, she was always able to perform her required work tasks and various other tasks related to her personal life. Bailey's daughter and husband also testified that after the work accident, Bailey was more limited with respect to her normal personal life activities. However, this evidence alone is inadequate to convince us that the determination of the OAH was not supported by sufficient evidence or against the clear weight of the evidence. Given the entirety of the record before us, we conclude that the findings of fact and conclusions of law reached by the OAH were based on substantial evidence and were within established law. None of the evidence presented conclusively shows a causal link between the work accident and Bailey's knee and neck injuries.

[¶ 24] We have long recognized that the burden of proof is on the claimant to prove that her work accident, not her preexisting condition, caused an injury. *Dan's Supermarket v. Pate,* 2001 WY 104, ¶ 17, 33 P.3d 1121, ¶ 17 (Wyo.2001); *Corman v. State ex rel. Workers' Compensation Div.,* 909 P.2d 966, 970 (Wyo.1996). A preexisting condition is noncompensable unless the claimant can prove that the work-related injury materially aggravated the preexisting injury. *Dan's Supermarket,* at ¶ 17; *Brees v. Gulley Enterprises, Inc.,* 6 P.3d 128, 132 (Wyo.2000). *See also Franks v. State ex rel. Workers' Safety and Compensation Div.,* 2002 WY 77, ¶ 13, 46 P.3d 876, ¶ 13 (Wyo.2002).

[¶ 25] The issue of the existence of a preexisting condition is indistinguishable from the central factual issue-did the injury "arise out of and occur in the course of employment?" If the injury resulted from a preexisting condition, rather than from the work-related accident, no compensable injury occurred. Consequently, when there is a conflict in the evidence as to this question, the claimant must prove by a preponderance of the evidence that the injury was work-

related and not preexisting., *Dan's Super-market,* at ¶ 19, quoting *Corman,* 909 P.2d at 969. Simply put, Bailey failed to prove by a preponderance of the evidence that her knee and neck injuries were work related and not preexisting. The medical and other evidence, even when viewed in a light most favorable to Bailey, is inconclusive. Therefore, because the evidence presented does not support Bailey's claim for benefits with respect to her knee and neck injuries, the OAH properly denied those claims.

[¶ 26] Finally upon our *de novo* review, we hold that the denial of temporary total disability benefits to Bailey by the OAH under the above circumstances was in accord with the law as expressed under the applicable provisions of the Wyoming Worker's Compensation Act.

## CONCLUSION

[¶ 27] We affirm the order of the OAH denying benefits to Bailey concerning her knee and neck injury claims.