12 P.3d 707 (2000)
STATE of Wyoming ex rel. WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellant (Petitioner),
v.
Lance A. CONNER, Appellee (Respondent).
No. 00-61.
Supreme Court of Wyoming.
October 27, 2000.
Representing Appellant: Gay Woodhouse, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; and Bernard P. Haggerty, Senior Assistant Attorney General.
Representing Appellee: George Santini, Cheyenne, WY.
Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL, and KITE, JJ.
HILL, Justice.
The Wyoming Workers' Safety and Compensation Division (Division) challenges an award of benefits in favor of the Appellee-worker, Lance A. Conner. The Division asserts that because Conner suffered a compensable injury in 1994 and received benefits for loss of earning capacity as a result of that injury, he may not receive such benefits for a second compensable injury that occurred in 1998. We affirm the order awarding benefits.

ISSUES
The Division states these issues:
I. Was the Hearing Examiner's award of a second permanent partial disability for the same wage loss contrary to law and an abuse of discretion?
II. Was the Hearing Examiner's failure to offset the first permanent partial disability *708 award against the second contrary to law and an abuse of discretion?
Conner states these issues:
1. Was the award of permanent partial disability benefits supported by substantial evidence?
2. Does the Wyoming Workers' Compensation Act allow for successive awards for permanent partial disability awards for separate injuries?

FACTS
On October 16, 1998, Conner suffered an injury to his left shoulder while in the course and scope of his employment with Rocking K Construction. Conner worked as a carpenter, earning $9.00 an hour. He was on top of a wall, spider walking between the rafters and, upon turning to change directions, something popped inside his shoulder. Conner underwent surgery to have the injury repaired on November 18, 1998. As a result of that injury, Conner was restricted to lifting no more than 25 pounds with his left shoulder. As we shall encounter in more detail later, Conner previously had suffered an injury to his right shoulder in 1994 and, as a result, had been restricted to lifting no more than 25 pounds with his right shoulder. Conner was off work from the date of his 1998 injury until January 22 or 23, 1999. At that time, he was released to return to work and called his employer to see about returning to work. Conner claimed that he had called Rocking K Construction three times, but his calls were not returned. Conner accepted employment with another company at $7.00 an hour.
By letter dated April 13, 1999, the Division informed Conner that he might be eligible for additional worker's compensation benefits. The letter offered him the option of applying for vocational rehabilitation benefits or a permanent partial disability award. Conner submitted an application for a permanent partial disability award. By letter dated July 12, 1999, the Division informed Conner that his claim was not approved because:
Your employer Rocking K Construction has stated on the Vocational Evaluation report, they are willing to accommodate your restrictions at the same salary you were earning at the time of your work incident. Based on the employers [sic] statement you have not suffered an income loss and are not eligible for Permanent Partial Disability benefits.
On July 12, 1999, Conner filed an objection to that determination, and a hearing was set for October 28, 1999. The Division's disclosure statement was filed on October 14, 1999, and summarized the issues as follows: Conner had the burden of proving his claim, and the application for benefits did not include information regarding an employment search[1]. The Division contended that for that reason alone, the claim should be denied, and that failure to do so would increase the costs to the system and cause the hearing examiner to be acting as a claims analyst. No mention was made of the fact that work was available at Rocking K Construction at Conner's previous hourly rate of $9.00 an hour. On October 20, 1999, the Division filed an amended disclosure statement, coupled with a petition for modification. In that document, the Division contended that work might have been available at Rocking K at $9.00 an hour. In addition, the Division asserted that Conner was getting a duplicate award because he had suffered a previous, similar injury in 1994. We will set out that assertion in detail because it is difficult to summarize:
Additionally, it has come to the Division's attention that the Employee-Claimant has previously received a permanent partial disability award for an injury to his shoulder from a 1994 accident, which was, apparently, awarded in 1996, based upon the Employee-Claimant's representation at that time that he was incapable of returning to work at a comparable wage, which was, at that time, also $9.00 per hour. A breakdown of the Employee-Claimant's *709 previous awards ... is attached hereto as defendant's exhibit S-F. Several issues, therefore, are also raised. Should the Employee-Claimant be twice awarded a permanent partial disability award for the inability to return to work at $9.00 per hour? Since the Employee-Claimant has previously received and accepted the benefit of an award for permanently being unable to return to work at $9.00 per hour, should the Employee-Claimant be estopped from pursuing this matter? Did the legislature intend that the Employee-Claimant should receive two awards for permanent partial disability under these circumstances? Does res judicata or issue preclusion prevent the Employee-Claimant from receiving two awards for permanent partial disability in a three-year period for the permanent inability to return to work at $9.00 per hour or a comparable wage? Does the Employee-Claimant have a pre-existing condition that prevented him from returning to work at $9.00 per hour?
The Division hereby also (in the alternative) petitions the Office of Administrative Hearings for a modification of the 1996 award of permanent partial disability (based upon the apparent mistake regarding the Employee-Claimant's inability to return to work at a wage comparable to $9.00 per hour) and to order offset of that previous award if the Hearing Examiner orders payment of permanent partial disability in the present case.

STANDARD OF REVIEW
Our standard of review is somewhat different in the instance where the administrative agency challenges the decision of the hearing examiner. The burden of persuasion usually assigned to claimants is now on the agency, here, the Division. See W.R.A.P. 12.01. Of course, a claimant for worker's compensation benefits has the burden of proving all of the essential elements of a claim by a preponderance of the evidence in the contested case hearing. Lunde v. State of Wyoming ex rel. Wyoming Workers' Compensation Division, 6 P.3d 1256, 1258 (Wyo. 2000). We review assertions of error raised by the Division under the standard described in Wyo.Stat.Ann. § 16-3-114(c) (LEXIS 1999):
16-3-114. Judicial review of agency actions; district courts.
....
(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
(i) Compel agency action unlawfully withheld or unreasonably delayed; and
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
(B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
In addition, the agency, as the trier of fact, is charged with weighing the evidence and determining the credibility of witnesses. The deference normally accorded to the findings of fact by a trial court is extended to the administrative agency, and the agency's decision as to the facts will not be overturned unless it is clearly contrary to the overwhelming weight of the evidence. Demonstrating evidentiary contradictions in the record does not establish the irrationality of the ruling, but we do examine conflicting evidence to determine if the agency reasonably could have made its finding and order based *710 upon all of the evidence before it. Lunde, 6 P.3d at 1259 (internal citations omitted).

DISCUSSION
So that the path ahead is clear, the Division's initial basis for denying Conner's claim (that he had not completed a work search) and all other later justifications invoked to deny Conner's claim have been abandoned by the Division in this appeal, with the exception of the charge that it was error for the hearing examiner to have awarded a second permanent partial disability benefit or to have failed to offset the award based on the 1994 injury against the award for the 1998 injury.
As the first step in the resolution of this case, we must determine if any matter relating to Conner's 1994 injury was even before the hearing examiner for consideration. The only claim that was before the hearing examiner for adjudication was Conner's 1998 left shoulder injury. Except to the extent permitted by statute, the resolution of Conner's 1994 claim was final and not open to modification. See Conn v. Ed Wederski Construction Company, 668 P.2d 649, 652-53 (Wyo.1983), and Wyo. Stat. Ann. § 27-14-605 (LEXIS 1999). Section 27-14-605 requires that an application for modification be submitted to the Division, identifying the grounds for a modification. Once such an application is submitted to the Division, the Division would then make a determination, and if a party were dissatisfied with that determination, the issues would be referred to a hearing examiner for a contested case hearing. That, of course, did not occur. Here, the only form of pleading was a notice in an amended disclosure statement that was filed with the hearing examiner in a different claim file. In addition, there are no materials from the case file associated with the 1994 injury in this record (with the exception of a summary of the costs of that claim, largely in handwritten form, and of no apparent relevance to a claim of mistake or other ground for modification of the 1994 claim. The only relevance that handwritten summary of the earlier benefits paid to Conner could have is to guide the hearing examiner in reducing the instant claim by the amount paid under the earlier claim.).
We are compelled to conclude that no issue with respect to the 1994 claim was before the hearing examiner for adjudication. The only issue to be decided at the hearing, therefore, was the benefit available to Conner if he proved his 1998 claim by a preponderance of the evidence. Moreover, to the extent the subject was broached with the hearing examiner, it was presented in the context of a mistake. However, no mistake in the 1994 proceedings is ever described by the Division. Since the matter of the 1994 award was not before the hearing examiner for consideration, the determination made in the instant case cannot be contrary to law and an abuse of discretion for a failure to take it into account in the adjudication of the 1998 claim.
The Division also contends that the hearing examiner's decision is contrary to law and an abuse of discretion because he did not offset the award resulting from the 1994 injury against the 1998 injury. The Division does not point to any statute or other law that allows or commands such a resolution. Our independent search has revealed no statute or law which would permit, much less require, such an offset, especially in the absence of a petition to modify the award based on the 1994 injury. The statute, as written, is clear and suffers from no ambiguity  Conner is entitled to permanent partial disability benefits if he meets the statutory requirements. The Division does not challenge that Conner has met his burden. If there is a flaw in the statute, that is a question to be resolved by the legislature, not the courts.
We find it appropriate to tarry a few minutes with the Division's assertion that the governing statute permits only one award for each wage loss. The Division characterizes successive awards for successive injuries as absurd and contrary to the purposes of the Worker's Compensation Act. This characterization is premised on the following sequence of events. Prior to the 1994 injury, Conner could use both of his shoulders in the construction industry, which demands of its workers considerable physical strength. Prior to the injury, Conner could carry as much as he could lift with his right shoulder, and, *711 commensurately, he earned $9.00 an hour for his labor. After the 1994 injury, Conner could only carry 25 pounds on his right shoulder, and he was only able to earn about $7.00 an hour (though the precise amount is established through a study that may be commissioned by the Division). For that loss of earning capacity, he received a monetary benefit from worker's compensation. Between 1994 and 1998, Conner increased his earning capacity from $7.00 an hour to $9.00 an hour (No evidence was offered as to why this was so because the statute does not require such a showing. Some speculation might include an observation that there was a $.90 increase in the minimum wage during that period of time; that the record shows Conner to have been a pleasant and hardworking fellow, likely to receive increases in his rate of pay over a period of four years; and that there may have been an increase in demand for workers because of a robust economy that drove up wage rates in 1997-98.). In 1998 Conner suffered an injury to his left shoulder. Prior to the injury, he could carry as much as he could lift on that shoulder, and he earned $9.00 an hour at the time of that injury. After the injury, he was only able to earn $7.00 an hour doing lighter duty work (and eventually found that he could no longer do that). The conclusion the Division asks us to reach is that an employee cannot receive benefits for loss of earning capacity from $9.00 an hour to $7.00 an hour twice in a four-year period because that is a double recovery; indeed, the argument appears to go so far as to say that once an injured worker's earning capacity is pegged at, e.g., $7.00 an hour, the worker can not be permitted to earn more than that unless the permanent partial disability benefit is returned to the Division. We see no sense in such an argument. More importantly, we can find nothing in the governing statutes which supports such a position.
The Division does not otherwise challenge the findings and conclusions of the hearing examiner, and so we affirm the award of benefits ordered.
NOTES
[1] We will briefly mention here that the employment search information turned out to be irrelevant because Conner went out and found a job almost immediately upon being released to return to work.