2004 WY 71

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellant (Petitioner),**

**v.**

**Anthony N. SAVICKI, Appellee (Respondent).**

**No. 03–129.**

Supreme Court of Wyoming.

June 22, 2004.

Representing Appellant:  Patrick J. Crank, Wyoming Attorney General; Steve Czoschke, Senior Assistant Attorney General; J.C. Demers, Special Assistant Attorney General, Cheyenne, Wyoming.

Representing Appellee: Terry J. Harris, Cheyenne, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Wyoming Workers' Safety and Compensation Division (Division) appeals the award of benefits to Appellant Anthony N. Savicki, contending that error occurred in the interpretation and application of Wyo. Stat. Ann. § 27–14–405(h) which governs permanent partial disability benefits.

[¶ 2] We affirm.

## ISSUES

[¶ 3] The parties present the following issues for our review:

Did the Hearing Examiner fail to properly apply W.S. 27–14–405(h) to the facts in this case in determining that the Employee was entitled to permanent partial disability benefits?

Was it an error of law to award permanent partial disability benefits for a clearly temporary diminution of earnings?

## FACTS

[¶ 4] In May of 1999, Savicki began working for Holmes & Narver, Inc., as a journeyman drywaller in Cheyenne. Savicki injured his lower back on January 31, 2000, and, in July of 2000, was given a 5% impairment rating for his back injury. At the time of injury, he earned $17.00 per hour.

[¶ 5] After being released to work after his injury, Savicki was hired in September 2000 to begin working at the Hitching Post in Cheyenne as a van driver for $5.75 an hour. Before he started that position, Savicki saw a classified ad for a job with Blazer Water Proofing Systems (Blazer) and applied for the job. Savicki was hired by Blazer and went to work for them on September 16, 2000, out of their Aurora, Colorado, office.

[¶ 6] Savicki's starting salary was $14.00 per hour. On August 30, 2001, when Savicki submitted his application for permanent par-

tial disability (PPD) benefits, he stated that he was being paid $15.00 per hour. After the end of August 2001, Savicki received wage increases at various times during the course of his employment with Blazer until June 2002 when he traveled or acted as a supervisor. At various times, when he returned to regular duties, his wages dropped back to $15.00 per hour but varied to as high as $17.50 per hour. In March of 2002, he received a merit raise to $16.50 per hour.

[¶ 7] At the time of injury, Wyo. Stat. Ann. § 27–14–405(h)(i) (Lexis 1999) permitted PPD benefits if the injured employee was unable to return to work at a comparable or higher wage than the wage the employee was earning at the time of the injury. In 2000, the legislature amended the statute to provide that benefits are available if the employee does not return to work for at least 95% of his pre-injury wage. 2000 Wyo. Sess. Laws ch. 98, § 1. The parties agreed that this figure should apply to this case. By dividing Savicki's total wages received and dividing by the number of hours worked, the Division determined that Savicki earned over $17 per hour at Holmes and over $19 per hour at Blazer and was therefore not entitled to benefits.

[¶ 8] Following a hearing, the hearing examiner determined that the Division did not have the authority to average wages over a period of time to calculate PPD benefits and was required to use the actual hourly rate before the injury and the actual hourly rate after returning to work. Finding that Savicki had established he was entitled to benefits, his award was granted, and that order was upheld by the district court. This appeal followed.

## DISCUSSION

*Standard of Review*

[¶ 9] The Division has limited its challenge to the interpretation and application of § 27–14–405(h)(i). That issue presents a question of law which we review de novo. When reviewing an administrative order, we are not compelled to accept any of the conclusions reached by the district court, and will review the case as if it had come

directly to this Court from the agency. *Appleby v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 2002 WY 84, ¶ 9, 47 P.3d 613, ¶ 9 (Wyo.2002); *Bailey v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 2002 WY 145, ¶¶ 6, 10, 55 P.3d 23, ¶¶ 6, 10 (Wyo.2002).

[¶ 10] The interpretation and correct application of the provisions of the Wyoming Workers' Compensation Act are questions of law over which our review authority is plenary. *Collicott v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 2001 WY 35, ¶ 4, 20 P.3d 1077, ¶ 4 (Wyo.2001). Conclusions of law made by an administrative agency are affirmed only if they are in accord with the law. *Id.* We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law. *Id.*

[¶ 11] At the time of his injury, the statute provided:

(h) An injured employee awarded permanent partial impairment benefits may apply for a permanent disability award subject to the following terms and conditions:

(i) The injured employee is because of the injury, unable to return to employment at a comparable or higher wage than the wage the employee was earning at the time of injury; . . . .

Wyo. Stat. Ann. § 27–14–405 (Lexis 1999). As mentioned before, according to a 2000 amendment to the statute, PPD benefits may be awarded when the injury prevents the employee from returning to employment at a wage at least 95% of his pre-injury wage. Wyo. Stat. Ann. § 27–14–405(h)(i) (LexisNexis 2001). The parties stipulated this figure applied.

*Statutory Interpretation*

[¶ 12] The statute required Savicki prove that because of the injury he was unable to return to work at Holmes or as a drywaller at his former wage and the Division has not contested that Savicki proved that subsequent lifting restrictions prevented his returning to work at Holmes. The Division does contend that the hearing examiner erred by comparing the wage at the time of injury with the wage paid immediately upon returning to work, arguing that PPD benefits were not intended to be paid on this basis alone, particularly when the lower wages prove to be a temporary circumstance. In its view, temporary lower wages do not allow a determination that Savicki was permanently and partially disabled. The Division contends that the temporary circumstances of Savicki's diminished salary for only a few months should be considered because the term "permanent partial disability" allows consideration of the reasonably permanent status of the employee. In its view, the hearing examiner may not limit itself to a snapshot of a temporary situation immediately upon the day Savicki returned to work.

[¶ 13] Under our statutory interpretation rules, this Court applies the plain meaning of the statute unless found to be ambiguous. *Adams v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 975 P.2d 17, 19 (Wyo.1999). Clearly, the hearing examiner has applied the plain meaning of the statute and in doing so has compared two wage rates at the particular points of time specified in the statute, resulting in looking at Savicki's wage rate immediately upon his return to work. This interpretation is not error. To uphold the Division's argument would require that we improperly add language to the statute, altering its plain meaning, and usurping the legislative function to amend the act. The Division refers us to our decision in *In re Claim of Cochran*, 993 P.2d 320 (Wyo.1999), where we reversed a denial of benefits. *Id.* at 323. In that case, the employee returned to work for the same employer and at the same pre-injury wage. *Id.* at 321. However, his employment was terminated six months later, and, because of limitations caused by his injury, he was unable to find work at a comparable or higher wage. *Id.* Looking just at the two points of time at issue in the case, benefits were denied by the hearing examiner. *Id.* at 322. However, this Court determined that the employee's injury had prevented him from returning to employment at a comparable wage and reversed that denial of benefits. *Id.* at 323.

[¶ 14] The Division contends that *Cochran* is not distinguishable from the facts of the present case and consistency requires that we look at a broader time frame for Savicki. However, the cases are consistent. Under the statutory language, an employee is to be compensated if he is unable to return to employment at a comparable or higher wage because of his injury. After Cochran was terminated, his injury prevented him from returning to work at a comparable or higher wage. If the loss of earning capacity is caused by the injury, then intervening employment does not prevent an award of PPD benefits. Here, Savicki's injury caused his loss of earning capacity at the time that he was first hired by Blazer and he, too, is entitled to an award of benefits.

[¶ 15] We have previously entertained the Division's dissatisfaction with our failure to consider subsequent wage increases based upon merit and said this:

> We find it appropriate to tarry a few minutes with the Division's assertion that the governing statute permits only one award for each wage loss. The Division characterizes successive awards for successive injuries as absurd and contrary to the purposes of the Workers' Compensation Act. This characterization is premised on the following sequence of events. Prior to the 1994 injury, Conner could use both of his shoulders in the construction industry, which demands of its workers considerable physical strength. Prior to the injury, Conner could carry as much as he could lift with his right shoulder, and, commensurately, he earned $9.00 an hour for his labor. After the 1994 injury, Conner could only carry 25 pounds on his right shoulder, and he was only able to earn about $7.00 an hour (though the precise amount is established through a study that may be commissioned by the Division). For that loss of earning capacity, he received a monetary benefit from worker's compensation. Between 1994 and 1998, Conner increased his earning capacity from $7.00 an hour to $9.00 an hour (No evidence was offered as to why this was so because the statute does not require such a showing. Some speculation might include an observation that there was a $.90 increase in the minimum wage during that period of time; that the record shows Conner to have been a pleasant and hard-working fellow, likely to receive increases in his rate of pay over a period of four years; and that there may have been an increase in demand for workers because of a robust economy that drove up wage rates in 1997–98.). In 1998 Conner suffered an injury to his left shoulder. Prior to the injury, he could carry as much as he could lift on that shoulder, and he earned $9.00 an hour at the time of that injury. After the injury, he was only able to earn $7.00 an hour doing lighter duty work (and eventually found that he could no longer do that). The conclusion the Division asks us to reach is that an employee cannot receive benefits for loss of earning capacity from $9.00 an hour to $7.00 an hour twice in a four-year period because that is a double recovery; indeed, the argument appears to go so far as to say that once an injured worker's earning capacity is pegged at, *e.g.*, $7.00 an hour, the worker can not be permitted to earn more than that unless the permanent partial disability benefit is returned to the Division. We see no sense in such an argument. More importantly, we can find nothing in the governing statutes which supports such a position.

*State ex rel. Wyoming Workers' Safety and Comp. Div. v. Conner,* 12 P.3d 707, 710–11 (Wyo.2000).

[¶ 16] *Conner* rejected the notion that an employee may be penalized by wage increases earned for merit at a later time. We reiterate that the pivotal question is whether the employee's injury has caused a loss of earning capacity and, if so, whether a comparison of the pre-injury wage to the post-injury wage offered is compensable under the applicable statute. In this case, Savicki's post-injury wage is compensable, and the order awarding benefits is affirmed.