2006 WY 82

In the Matter of the Worker's Compensation Claim of Lena CHAVEZ, Appellant (Petitioner/Appellant),

v.

MEMORIAL HOSPITAL OF SWEETWATER COUNTY, Appellee (Employer)

State of Wyoming, ex rel., Wyoming Workers' Safety and Compensation Division, Appellee (Respondent/Appellee).

No. 05–190.

Supreme Court of Wyoming.

July 13, 2006.

Representing Appellant: István Harton of Steve Harton, P.C., Rock Springs, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; John W. Renniesen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; Kristi M. Radosevich, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

KITE, Justice.

[¶1]   Lena Chavez challenges the Office of Administrative Hearings' (OAH) summary judgment order denying her claim for permanent partial disability (PPD) benefits.   The hearing examiner decided, as a matter of law, Ms. Chavez had not suffered a loss of earning capacity because: (1) a vocational evaluation indicated she could return to work at a wage of at least 95% of her pre-injury wage; and (2) she had accepted a job in Scottsbluff, Nebraska at a wage greater than her pre-injury wage.   After the district court affirmed the OAH decision, Ms. Chavez appealed to this Court.   We agree no genuine issues of material fact existed regarding Ms. Chavez's return to work at a wage greater than her pre-injury wage and the division was entitled to judgment as a matter of law. We affirm.

* Chief Justice at time of expedited conference.

## ISSUES

[¶ 2] Ms. Chavez articulates several issues on appeal:

A. Was the Office of Administrative Hearings' action not in accordance with the law when it upheld the Division's denial of permanent partial disability benefits based upon the employee's employment subsequent to the determination denying benefits?

B. Was the Office of Administrative Hearings' action not in accordance with the law when it upheld the Division's denial of permanent partial disability benefits based upon the employee's employment outside the State of Wyoming?

C. Was the Office of Administrative Hearings' action not in accordance with the law and contrary to constitutional right, power, privilege or immunity when it upheld the Division's denial of permanent partial disability benefits based upon the bare criteria of availability of employment at 95% of the employee's pre-injury wage, without further inquiry?

D. Was the Office of Administrative Hearings' action arbitrary, capricious or otherwise not in accordance with the law when it granted summary judgment in the face of conflicting material facts about the availability of employment at 95% of the employee's pre-injury wage?

The division presents a single issue:

Whether the Office of Administrative Hearings' decision granting summary judgment to the Wyoming Workers' Compensation Division is in accordance with law?

## FACTS

[¶ 3] The underlying facts of this case are undisputed. Ms. Chavez suffered a work-related injury to her cervical spine on October 27, 1999, while working for Memorial Hospital of Sweetwater County (Memorial Hospital) as a certified nursing assistant (CNA) and unit secretary. At the time Ms. Chavez was injured, she was earning $7.44 per hour. She continued to work at Memorial Hospital until she underwent surgery in July of 2002. When her physician released her to return to work, he imposed certain restrictions upon her activities, including a fifty-pound lifting restriction, no overhead work, and no repetitive motions. Because of her restrictions, she could no longer work as a CNA at Memorial Hospital.

[¶ 4] In November 2002, Ms. Chavez applied for and received a fifteen percent (15%) permanent partial impairment award. She subsequently applied for PPD benefits claiming she had experienced a loss of earning capacity as a result of the work-related injury. The division's vocational evaluator concluded she was qualified to perform several different types of jobs, including hospital admitting clerk, teacher aide, and night auditor. The vocational evaluator contacted ten employers in Sweetwater and surrounding counties in Wyoming and located some job openings for those positions, including one opening for an admitting clerk at Memorial Hospital. Two of the ten employers indicated they paid wages of at least 95% of the wage Ms. Chavez was earning when she was injured. The vocational evaluation also noted Ms. Chavez was willing to consider relocating to Scottsbluff, Nebraska for employment. Relying upon the vocational evaluation, the division issued a final determination denying her claim for PPD benefits. Ms. Chavez objected to the division's final determination and requested a hearing.

[¶ 5] On April 23, 2003, Ms. Chavez began working as a CNA in Scottsbluff, Nebraska at a wage of $11.00 per hour. After the division learned of her employment, it filed a motion for summary judgment claiming there were no genuine issues of material fact and, as a matter of law, she was not entitled to PPD benefits. The hearing examiner granted the division's summary judgment motion. Ms. Chavez petitioned the district court for review of the OAH decision, and the district court affirmed. She then filed a notice of appeal with this Court.

## STANDARD OF REVIEW

[¶ 6] In reviewing an appeal from a district court's decision on a petition for

review of an administrative action, we afford no deference to the district court's decision and, instead, review the case as if it came directly from the agency. *Newman v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 2002 WY 91, ¶ 7, 49 P.3d 163, 166 (Wyo.2002). The summary judgment procedures set forth in W.R.C.P. 56 apply to worker's compensation cases. *Shaffer v. State ex. rel. Wyo. Workers' Safety and Comp. Div.*, 960 P.2d 504, 506 (Wyo.1998); *Neal v. Caballo Rojo, Inc.*, 899 P.2d 56, 58 (Wyo.1995). Thus, we apply our typical standard for reviewing summary judgments:

Summary judgment motions are determined under the following language from W.R.C.P. 56(c):

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The purpose of summary judgment is to dispose of suits before trial that present no genuine issue of material fact. *Moore v. Kiljander*, 604 P.2d 204, 207 (Wyo.1979).... A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Schuler v. Community First Nat. Bank*, 999 P.2d 1303, 1304 (Wyo.2000). The summary judgment movant has the initial burden of establishing by admissible evidence a prima facie case; once this is accomplished, the burden shifts and the opposing party must present specific facts showing that there is a genuine issue of material fact. *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo.1987); *Gennings v. First Nat. Bank of Thermopolis*, 654 P.2d 154, 156 (Wyo.1982).

This Court reviews a summary judgment in the same light as the district court, using the same materials and following the same standards. *Unicorn Drilling, Inc. v. Heart Mountain Irr. Dist.*, 3 P.3d 857, 860 (Wyo.2000) (quoting *Gray v.*

*Norwest Bank Wyoming, N.A.*, 984 P.2d 1088, 1091 (Wyo.1999)). The record is reviewed, however, from the vantage point most favorable to the party who opposed the motion, and this Court will give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Garcia v. Lawson*, 928 P.2d 1164, 1166 (Wyo.1996).

*McGee v. Caballo Coal Co.*, 2003 WY 68, ¶ 6, 69 P.3d 908, ¶ 6 (Wyo.2003) (quoting *Garnett v. Coyle*, 2001 WY 94, ¶ ¶ 3–5, 33 P.3d 114, ¶ ¶ 3–5 (Wyo.2001)).

*Markstein v. Countryside I, L.L.C.*, 2003 WY 122, ¶ 11, 77 P.3d 389, 393 (Wyo.2003). *See also, Cathcart v. State Farm Mut. Auto. Ins. Co.*, 2005 WY 154, ¶ 11, 123 P.3d 579, 585 (Wyo.2005). The interpretation and correct application of the provisions of the Wyoming Worker's Compensation Act are questions of law, which we review *de novo*. *Ludwig v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 2004 WY 34, ¶ 7, 86 P.3d 875, 877–78 (Wyo.2004).

## DISCUSSION

[¶ 7] Ms. Chavez applied for PPD benefits claiming she had suffered a loss of earning capacity as a result of her work-related back injury. "Permanent partial disability" is defined as "the economic loss to an injured employee ... resulting from a permanent physical impairment[.]" Wyo. Stat. Ann. § 27–14–102(a)(xv) (LexisNexis 2005). *See also, Phillips v. TCI–The Industrial Co. of Wyoming, Inc.*, 2005 WY 40, ¶ 29, 109 P.3d 520, 533 (Wyo.2005). Wyo. Stat. Ann. § 27–14–405(h) (LexisNexis 2005) sets out the requirements for PPD benefits:

(h) An injured employee awarded permanent partial impairment benefits may apply for a permanent disability award subject to the following terms and conditions:

(i) The injured employee is because of the injury, unable to return to employment at a wage that is at least ninety-five percent (95%) of the monthly gross earnings the employee was earning at the time of injury;

(ii) An application for permanent partial disability is filed not before three (3)

months after the date of ascertainable loss or three (3) months before the last scheduled impairment payment, whichever occurs later, but in no event later than one (1) year following the later date; and

 (iii) The employee has actively sought suitable work, considering the employee's health, education, training and experience.

An injured worker has the burden of proving each of the elements of his or her claim by a preponderance of the evidence. *Abeyta v. State ex. rel. Wyo. Workers' Safety and Comp. Div.*, 2004 WY 50, ¶ 5, 88 P.3d 1072, 1075 (Wyo.2004).

███ [¶ 8] In determining whether an employee has suffered a loss of earning capacity, both medical and non-medical evidence may be relevant. *McCarty v. Bear Creek Uranium Co.*, 694 P.2d 93, 94–95 (Wyo.1985). Factors to be considered in determining whether the employee suffered a loss of earning capacity include the employee's physical impairment, including the nature and extent of her injury, age, education, actual earnings, including pre-injury and post-injury earnings, ability to continue pre-injury employment, and post-injury employment prospects.[1] *Id.*; *State ex rel. Wyo. Worker's Comp. Div. v. White*, 837 P.2d 1095 (Wyo.1992). *See also, Whiteman v. Workers' Safety and Comp. Div., Dep't of Employment*, 987 P.2d 670 (Wyo.1999). No single factor is determinative of the issue. "The evidence of wages earned by the employee is material to the question of the employee's earning capacity and is entitled to whatever weight the fact finder gives to it. 'A workman's post-injury earnings is evidence which, depending upon the circumstances of an individual case, may be of great, little, or no importance in determining loss of earning capacity.'" *McCarty*, 694 P.2d at 95, quoting *Ford v. State Accident Ins. Fund*, 7 Or.App. 549, 492 P.2d 491, 493 (Or.1972) (some citations omitted).

[¶ 9] The controversy in this case concerns whether, under § 27–14–405(h)(i), Ms. Chavez was able to return to work at a wage of at least 95% of the amount she was earning at the time of her injury. When she was injured, Ms. Chavez was earning $7.44 per hour.[2] The hearing examiner considered the vocational evaluation and her Nebraska employment in concluding she had not suffered a loss of earning capacity as a result of her work-related back injury. The vocational evaluation took into account the factors articulated in *McCarty* and *White*, including Ms. Chavez's physical limitations, work history, pre-injury wages, age, education, and intentions as to employment in the future. It then listed employment positions available in Wyoming that would accommodate her physical limitations and paid 95% of her pre-injury wage.

[¶ 10] The hearing examiner's findings regarding the vocational evaluation stated, in part:

 8. Based upon the medical records, as well as the Functional Capacity Evaluation, a Vocational Evaluation was completed by Concentra on February 27, 2003. According to the Vocational Evaluation, it was found that two of the ten jobs contacted by the vocational evaluator reported an hourly starting wage of that was at least 95% of the Claimant's pre-injury wage.

---

1. These factors were actually incorporated into prior versions of the statute. *See, e.g.,* § 27–14–405(b)(xvi) (1991 Repl.Vol.). A list of specific factors is no longer included in the statutory language; nevertheless, the factors are still relevant to our loss of earning capacity analysis. *See Whiteman v. Workers' Safety and Comp. Div., Dep't of Employment*, 987 P.2d 670, 673 (Wyo. 1999).

2. The current version of § 27–14–405 was used in deciding Ms. Chavez's PPD claim, despite the fact she was injured in 1999 when a different version of the statute was in effect. In addition, although § 27–14–405 states the employee's pre-injury and post-injury monthly gross earnings should be compared, the hearing examiner used her pre-injury and post-injury hourly wages in determining whether she qualified for PPD benefits. Ms. Chavez does not challenge the use of the current statute or her hourly wages instead of her monthly gross earnings in determining her loss of earning capacity. *See, State ex rel. Wyo. Workers' Safety and Comp. Div. v. Savicki*, 2004 WY 71, 92 P.3d 294 (Wyo.2004) (using the same type of analysis).

9. Further, the vocational evaluation listed a number of positions that the Claimant may have been qualified for, and listed some employers who actually then had current openings in those occupational fields. Those jobs were in Sweetwater, Lincoln, Albany and Teton counties in Wyoming. Some of the jobs would have paid 95% of the claimant's gross monthly earnings at the time of her injury.

[¶ 11] Ms. Chavez claims genuine issues of material fact exist regarding whether employment was actually available to her in Wyoming. She argues, despite the vocational evaluation's conclusions, Memorial Hospital would not hire her as an admitting clerk because she could not type at least forty words per minute and she was unable to find other suitable employment in the geographical area.

[¶ 12] However, the hearing examiner looked beyond the vocational evaluation and relied upon Ms. Chavez's employment in Nebraska in granting summary judgment. Ms. Chavez argues her Nebraska employment should not have been considered in determining whether she was entitled to PPD benefits because: 1) she commenced the job after she applied for and was denied PPD benefits by the division; and 2) the job was not located in Wyoming. According to Ms. Chavez, the hearing examiner should have considered only the circumstances existing when she applied for and was denied benefits, i.e. she was unemployed and living in Wyoming. She argues, therefore, her post-injury wage was $0.00 per hour.

[¶ 13] The OAH summary judgment order contained the following conclusions:

12. In the matter at hand, when considering all the factors elaborated in the *White* case, the bottom line is the Claimant has returned to work at a wage of 95% of her pre-injury wage. The law does not say she must be rehired at her previous position. In this case, for whatever reason the Claimant was not able to return to Memorial Hospital of Sweetwater County. However, she was willing to take work in Scottsbluff with accommodation. The facts are such that despite the Claimant's

condition at the time of the vocational evaluation, she returned to work at a similar position despite her injury.

* * *

14. The bottom line is she was able to return to work despite her injury. The fact it was not the employer at the time of the injury is irrelevant. Accordingly, the Claimant is not eligible for a permanent partial disability award. In the matter at hand there is no dispute as to the fact that the Claimant has returned to work at a wage of more than she was making at the time of injury. Accordingly there is no dispute as to these ultimate facts.

[¶ 14] We turn first to Ms. Chavez's claim her employment in Nebraska should not be considered in determining whether she had suffered a loss of earning capacity because she did not commence that job until after she had applied for, and been denied, PPD benefits. Ms. Chavez's argument is not supported by our precedent. The *White* factors specifically foresee taking into account evidence of the employee's post-injury earnings and job prospects, regardless of when the employee commences that employment. The focal point for a loss of earnings analysis is the employee's actual ability or inability to return to employment at a comparable or higher wage because of the work-related injury. *State ex rel. Wyo. Workers' Safety and Comp. Div. v. Savicki*, 2004 WY 71, ¶ 14, 92 P.3d 294, 297 (Wyo. 2004); *State ex rel. Wyo. Workers' Safety and Comp. Div. v. Conner*, 12 P.3d 707, 710–11 (Wyo.2000). Our decision in *Savicki* is instructive on this issue. Mr. Savicki was a drywaller, earning $17.00 when he suffered a work-related injury. His post-injury earnings were described as follows:

After being released to work after his injury, Savicki was hired in September 2000 to begin working at the Hitching Post in Cheyenne as a van driver for $5.75 an hour. Before he started that position, Savicki saw a classified ad for a job with Blazer Water Proofing Systems (Blazer) and applied for the job. Savicki was hired by Blazer and went to work for them on September 16, 2000, out of their Aurora, Colorado, office.

Savicki's starting salary was $14.00 per hour. On August 30, 2001, when Savicki submitted his application for permanent partial disability (PPD) benefits, he stated that he was being paid $15.00 per hour. After the end of August 2001, Savicki received wage increases at various times during the course of his employment with Blazer until June 2002 when he traveled or acted as a supervisor. At various times, when he returned to regular duties, his wages dropped back to $15.00 per hour but varied to as high as $17.50 per hour. In March of 2002, he received a merit raise to $16.50 per hour.

*Savicki*, ¶ 5–6, 92 P.3d at 295. The division advocated averaging Savicki's post-injury wages, which would have resulted in a finding he had not suffered a loss of earning capacity and was not, therefore, entitled to PPD benefits. *Savicki*, ¶¶ 8, 12, 95 P.3d at 295. The hearing examiner disagreed with the division's position and, instead, compared the claimant's wage at the time of the injury with his wage when he first returned to work after his injury, resulting in an award of PPD benefits. *Savicki*, ¶ 13, 92 P.3d at 296. On appeal, we concluded the hearing examiner correctly interpreted the statute and compared the claimant's wages at those two points in time in order to determine whether the injury had impaired his ability to earn a living. *Id.* Mr. Savicki's employment status and wage at the time he applied for and/or was denied PPD benefits played no part in our analysis. Instead, we concluded the hearing examiner correctly focused on Mr. Savicki's wage when he first returned to work following his injury because it demonstrated the effect of his injury on his earning capacity.

[¶ 15] Applying these principles to this case, it is clear the hearing examiner did not err by considering Ms. Chavez's post-injury employment even though it commenced after she applied for and was denied PPD benefits. Consistent with *Savicki*, the hearing examiner considered Ms. Chavez's CNA job in Nebraska because it was her first employment after she returned to work following her surgery, irrespective of when she filed her PPD application. Ms. Chavez secured employment in a position similar to the one she

held when she was injured at a wage considerably higher than her pre-injury wage. The focus of the statute is on the injured employee's actual ability to earn. If we were to accept Ms. Chavez's argument that employment commencing after the filing of an application for PPD benefits may not be considered, employees would have a disincentive to return to work following an injury. Such an interpretation would clearly be inconsistent with § 27–14–405(h)(iii), which requires employees to show they have actively sought suitable work in order to qualify for PPD benefits. The hearing examiner did not err, as a matter of law, by considering Ms. Chavez's actual post-injury employment even though it commenced after she applied for and was denied PPD benefits.

[¶ 16] Next, Ms. Chavez claims the hearing examiner erred by considering her employment outside of Wyoming, relying upon our decision in *Lunde v. State ex rel. Wyo. Workers' Comp. Div.*, 6 P.3d 1256 (Wyo.2000). We do not agree with Ms. Chavez's claim that *Lunde* prohibits consideration of her employment in Nebraska. *Lunde* stands only for the proposition that a vocational evaluation must consider available jobs in Wyoming. Our holding in that case does not prohibit a hearing examiner from considering an employee's actual employment in another state.

[¶ 17] Again, the focus must be upon the employee's true ability to earn a living. If we were to disregard the reality of an employee being employed at a wage higher than her pre-injury wage, albeit in another state, we would not be evaluating her true ability to earn a living. The hearing examiner did not err by relying upon Ms. Chavez's actual employment in Nebraska in determining whether she had suffered a loss of earning capacity.

[¶ 18] Ms. Chavez also argues the hearing examiner violated public policy and her constitutional right to travel or, what she terms the "reciprocal freedom to stay put," by penalizing her for accepting a job in Nebraska. We do not need to address this argument because the record clearly shows she chose to accept the CNA position in

Nebraska. In fact, the vocational evaluator noted Ms. Chavez expressed a willingness to relocate to Nebraska before the division denied her claim. The hearing examiner's denial of her application for PPD benefits had no impact upon her right to travel or to "stay put."

[¶ 19] No dispute of fact existed concerning Ms. Chavez's actual post-injury employment. Therefore, we conclude the hearing examiner properly granted summary judgment in favor of the division because, as matter of law, she did not meet the statutory requirements for PPD benefit. No factual determination of whether or not Ms. Chavez could have actually obtained employment as outlined in the vocational evaluation was necessary because Ms. Chavez voluntarily ended her local job search, relocated to Nebraska, and accepted a position very similar to her pre-injury employment at a considerably higher wage. As recognized by the hearing examiner, the bottom line was Ms. Chavez did not qualify for PPD benefits, as a matter of law, because she did not suffer a loss of earning capacity.

[¶ 20] Affirmed.