2011 WY 111

In the Matter of the Worker's Compensation Claim of Dawn M. SCHOSSOW, Appellant (Petitioner),

v.

STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).

No. S–10–0183.

Supreme Court of Wyoming.

July 15, 2011.

Representing Appellant: Hampton M. Young, Jr., Law Office of Hampton M. Young, Jr., PC, Casper, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; James M. Causey, Senior Assistant Attorney General; Kelly Roseberry, Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶1]  Dawn M. Schossow (the appellant) injured her back while working as a nurse. Upon returning to work, the appellant requested Permanent Partial Disability (PPD) benefits, pursuant to Wyo. Stat. Ann. § 27–14–405(h) (LexisNexis 2011), which request was denied.  The Office of Administrative Hearings (OAH) upheld the denial of benefits and the district court affirmed the OAH's decision.  In this appeal, the appellant claims that the OAH hearing examiner erred as a matter of law in interpreting Wyo. Stat. Ann. § 27–14–405(h)(i), and that the hearing examiner's decision was not supported by substantial evidence.  We will affirm.

## ISSUES

[¶2]  1.  Was the hearing examiner's interpretation of Wyo. Stat. Ann. § 27–14–405(h)(i) contrary to law?

2.  Was the hearing examiner's finding that the appellant failed to meet her burden of proving that she had suffered a loss of earning capacity supported by substantial evidence?

## FACTS

[¶3]  On August 17, 2004, the appellant was lifting a comatose patient when she felt a "pop" in her lower back and her right leg went numb.  After initial conservative treatment and a return to work, the appellant stopped working, and on September 27, 2005, she underwent a two-level anterior lumbar fusion at the L4–L5 and L5–S1 levels of the spine.  At the time of her injury, the appellant was employed as a nurse, working between 72 and 74 hours every two weeks, and earning $23.34 per hour, or between $3,555.07 and $3,742.18 per month.

[¶4]  After her surgery, the appellant was no longer able to work as a nurse due to restrictions imposed by her doctor.  The appellant was released to work part-time and began working at another medical facility as a quality assurance coordinator on December 27, 2005.  Her starting salary was $21.00 per hour.

[¶5]  In March of 2007, the appellant submitted an Application for Permanent Partial Disability Award or Vocational Rehabilitation Benefits.  As a result of her application, the appellant was referred for a vocational evaluation.  The vocational evaluation report included the finding that there were three jobs available to the appellant with a beginning salary of 95% or higher than her salary at the time of her injury: Nurse Case Manager, $3,893.00 per month; Nurse 4 Nurse Program Specialist, $3,896.00 per month; and

Nurse Surveyor, $3,893.00 per month. As a result of these findings, the Division issued a final determination denying the appellant's application for PPD benefits, concluding that she was "not eligible for this benefit as the information indicates that you can return to an occupation at a comparable wage." The appellant objected to the denial of her PPD claim and requested a contested case hearing.

[¶ 6] The matter was referred to the OAH and a contested case hearing was held on March 3 and 19, 2008. Both parties presented evidence regarding the appellant's wages and employment opportunities following her injury, the details of which evidence will be examined in the discussion section below. On April 16, 2008, the OAH issued its Findings of Fact, Conclusions of Law, and Order, denying the appellant's requested PPD benefits. The OAH concluded that the appellant failed to meet her burden of showing, by a preponderance of the evidence, that she was unable to return to employment at a wage that was at least 95% of her pre-injury monthly gross earnings. The appellant appealed this determination to the district court and on June 23, 2010, the district court affirmed the OAH's decision. The appellant timely appealed the matter to this Court.

## STANDARD OF REVIEW

[¶ 7] When reviewing administrative decisions, Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2011) requires us, among other things, to set aside agency action not in accordance with the law or decisions unsupported by substantial evidence.[1] This appeal presents both a legal and an evidentiary question.

1. Section 16–3–114(c) provides:
   (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
   (i) Compel agency action unlawfully withheld or unreasonably delayed; and
   (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

[¶ 8] "The interpretation and correct application of the Wyoming Worker's Compensation Act is a question of law which is accorded plenary review. The agency's conclusion[s] of law can only be affirmed if they are in accordance with the law." *Poll v. State ex rel. Dep't of Emp't, Div. of Workers' Safety & Comp.*, 963 P.2d 977, 980 (Wyo. 1998) (citations omitted). We have said that whether a post-injury wage is comparable to a pre-injury wage is a question of law. *See Adams v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 975 P.2d 17, 19–20 (Wyo.1999).

[¶ 9] With regard to the evidentiary question, we have said that the agency's findings of fact are afforded great deference, and we will not "adjust the decision of the agency unless it is clearly contrary to the overwhelming weight of the evidence on the record." *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 26, 49 P.3d 163, 173 (Wyo.2002). We have consistently held that, "[i]f the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal." *Id.* at ¶ 12, at 168 (quoting *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Jensen*, 2001 WY 51, ¶ 10, 24 P.3d 1133, 1136 (Wyo.2001)). This "substantial evidence" test has been described as follows:

When the burdened party prevailed before the agency, we will determine if substantial evidence exists to support the finding for that party by considering whether there is relevant evidence in the entire record which a reasonable mind might accept in

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
(B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

support of the agency's conclusions. If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. *See, Wyo. Consumer Group v. Public Serv. Comm'n of Wyo.,* 882 P.2d 858, 860–61 (Wyo.1994); [*Board of Trustees, Laramie County School Dist. No. 1 v.*] *Spiegel,* 549 P.2d [1161,] 1178 [ (Wyo.1976) ] (discussing the definition of substantial evidence as "contrary to the overwhelming weight of the evidence"). If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo.2008).

## DISCUSSION

### *Was the hearing examiner's interpretation of Wyo. Stat. Ann. § 27–14–405(h)(i) contrary to law?*

■ [¶ 10] The first question raised involves the proper interpretation and application of Wyo. Stat. Ann. § 27–14–405(h)(i). This statute governs the availability of PPD benefits and sets out three elements that an injured worker must prove in order to qualify to receive these benefits:

(h) An injured employee awarded permanent partial impairment benefits may apply for a permanent disability award subject to the following terms and conditions:

(i) The injured employee is because of the injury, unable to return to employment at a wage that is at least ninety-five percent (95%) of the monthly gross

earnings the employee was earning at the time of injury;

(ii) An application for permanent partial disability is filed not before three (3) months after the date of ascertainable loss or three (3) months before the last scheduled impairment payment, whichever occurs later, but in no event later than one (1) year following the later date; and

(iii) The employee has actively sought suitable work, considering the employee's health, education, training and experience.

The only dispute in this case concerns subpart (i): whether the appellant is able to return to work earning "at least ninety-five percent (95%) of the monthly gross earnings [she] was earning at the time of injury."

[¶ 11] The parties proffer different interpretations of this statutory language. The appellant takes the position that earning capacity must be calculated based on the wage earned by a claimant immediately upon returning to the workforce following an injury. To support this argument, the appellant relies primarily on *State ex rel. Wyo. Workers' Safety and Compensation Division v. Savicki,* 2004 WY 71, 92 P.3d 294 (Wyo.2004). There, the claimant was a drywaller earning $17.00 per hour at the time he was injured. *Id.* at ¶ 4, 92 P.3d at 295. After being released to work following his injury, the claimant began working for a hotel as a van driver, earning $5.75 an hour. *Id.* at ¶ 5, 92 P.3d at 295. He worked there a short time before being hired by another construction company, where his initial wage was $14.00 per hour. *Id.* at ¶ 6, 92 P.3d at 295. That wage fluctuated at various times depending on the nature of the work he was doing. *Id.*

[¶ 12] The claimant's application for PPD benefits was initially denied, because the Division concluded that the claimant was able to return to work at 95% of his pre-injury wage. *Id.* at ¶ 7, 92 P.3d at 295. In reaching this conclusion, the Division divided the claimant's total post-injury wages by his total post-injury hours worked and determined that his post-injury hourly wage was $19.00 per hour—more than 95% of his pre-injury wage. *Id.* After a contested case hearing,

the hearing examiner rejected this calculation and found that PPD benefits should be determined based on the "actual hourly rate before the injury and the actual hourly rate after returning to work." *Id.* at ¶ 8, 92 P.3d at 295. On appeal, we upheld this decision stating: "Clearly, the hearing examiner has applied the plain meaning of the statute and in doing so has compared two wage rates at the particular points of time specified in the statute, resulting in looking at Savicki's wage rate immediately upon his return to work." *Id.* at ¶ 13, 92 P.3d at 296.

[¶ 13] The appellant in the present case argues that, based on *Savicki,* the wage that should be used in calculating her eligibility for PPD benefits is the $21.00 per hour she was earning immediately upon returning to work, and because this is not 95% of her pre-injury wage of $23.34, she should be entitled to benefits.

[¶ 14] The appellee counters that an injured employee's wage on the date he or she returns to work is not dispositive of the question of entitlement to PPD benefits, and urges that the focus of the statute is on the employee's *actual* ability to earn. In support of this position, the appellee cites *Cochran v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 993 P.2d 320 (Wyo.1999). There, the claimant was earning $10.00 per hour as a carpenter prior to his injury. *Id.* at 322. After his injury, he was re-hired by the same company and paid the same wage; however, he was laid off six months later. *Id.* at 322–23. After his lay-off, and because of physical limitations caused by his injury, the claimant was unable to find work as a carpenter, and instead took a job as a warehouse manager, earning $8.00 per hour. *Id.* at 322. The claimant's request for PPD benefits was denied by the Division and that denial was upheld by the OAH. *Id.* On appeal, we reversed the OAH. In doing so, we ignored the $10.00 wage the appellant earned immediately upon returning to employment following his injury and considered only the $8.00 wage the claimant earned after being laid off.[2] *Id.* at 322–23.

[¶ 15] The appellee discusses this case to illustrate that a claimant's initial wage upon returning to employment following an injury is not the only indicator of a claimant's true earning capacity. The appellee points out that when the claimant in *Cochran* first returned to work, he was earning his same pre-injury wage—$10 per hour. Under the appellant's interpretation of the statute, this is the wage that should be considered in determining whether a claimant is entitled to PPD benefits. However, this Court disregarded the $10.00 per hour wage, and considered the $8.00 wage inasmuch as that wage more accurately reflected the claimant's actual earning capacity.

[¶ 16] We have said that "the focus of § 27–14–405(h) is on the injured employee's *true ability* to earn a living." *Bonsell v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2006 WY 114, ¶ 25, 142 P.3d 686, 692 (Wyo.2006) (emphasis supplied). This determination cannot be made in a vacuum, nor can it be based on a static snapshot of the claimant's employment status and wage at any one time. The limited interpretation of the language of that statute the appellant urges us to adopt could inhibit not only the Division's ability accurately to assess a claimant's actual earning capacity, but as illustrated by *Cochran,* it could potentially limit the availability of PPD benefits to a claimant who might otherwise be eligible. In *Cochran,* had we considered only the claimant's wage when he first returned to work with his previous employer, he would not have qualified for benefits.

[¶ 17] Furthermore, such an interpretation could create a disincentive for claimants seeking employment following an injury. Such a result was discussed in *Chavez v. Memorial Hospital of Sweetwater County,* 2006 WY 82, 138 P.3d 185 (Wyo.2006). There, the claimant's request for PPD benefits was denied after a vocational evaluator concluded that, although presently unemployed, the claimant was eligible for jobs

---

**2.** The version of Wyo. Stat. Ann. § 27–14–405 applicable in *Cochran* did not have the specific 95% language, but only said that a claimant was entitled to benefits if he could not return to work at a "comparable or higher" wage. In *Cochran* we concluded that $8.00 per hour was not a comparable wage to his pre-injury $10.00 per hour wage.

paying 95% of her pre-injury wage. *Id.* at ¶ 4, 138 P.3d at 187. The claimant challenged this determination. However, before a contested case hearing was held, the claimant secured employment out of state, earning a wage of more than 95% of her pre-injury wage. *Id.* at ¶ 5, 138 P.3d at 187. The hearing examiner summarily dismissed her case, finding that because of her employment and wage, she did not qualify for PPD benefits. *Id.*

[¶ 18] On appeal, the claimant argued that the hearing examiner should not have been allowed to consider wage increases or job changes after she initially applied for and was denied PPD benefits. *Id.* at ¶ 12, 138 P.3d at 190. We rejected that argument, stating:

If we were to accept Ms. Chavez's argument that employment commencing after the filing of an application for PPD benefits may not be considered, employees would have a disincentive to return to work following an injury. Such an interpretation would clearly be inconsistent with § 27–14–405(h)(iii), which requires employees to show they have actively sought suitable work in order to qualify for PPD benefits. The hearing examiner did not err, as a matter of law, by considering Ms. Chavez's actual post-injury employment even though it commenced after she applied for and was denied PPD benefits.

*Id.* at ¶ 15, 138 P.3d at 191.

[¶ 19] In our review of the cases discussing PPD benefits eligibility, we found none that supports the appellant's assertion that, in computing PPD eligibility, the Division may only consider the initial wage received after the employee has been released to work. Even *Savicki,* the case cited by the appellant to support her position, does not support her reasoning. There, the claimant's first post-injury job paid $5.75 per hour driving a van. Under the appellant's argument, $5.75 should have been the wage used to determine PPD benefits. However, we disregarded that amount and focused our analysis on the wage the claimant earned in his subsequent construction job, which wage more accurately reflected the claimant's actual earning capacity.

[¶ 20] In the present case, when determining whether the appellant could return to work at 95% of her pre-injury wage, the hearing examiner stated: "This Office places its primary focus in this case on [the appellant's] true ability to earn a living after sustaining a significant, on-the-job injury to her lower back which resulted in a two level fusion." In making that decision, the hearing examiner considered the appellant's pre-injury wages and work schedule, the nature of her injury and the physical limitations resulting therefrom, her post-injury employment history and conditions as described by the appellant and her employers, and her post-injury employment prospects as described by the vocational evaluator. We find, as a matter of law, that the hearing examiner properly applied Wyo. Stat. Ann. § 27–14–405(h)(i) in assessing what wage to use when determining the appellant's PPD eligibility. That is, the hearing examiner did not err in refusing to consider only the appellant's wage immediately upon returning to the workforce.

***Was the hearing examiner's finding that the appellant failed to meet her burden of proving that she had suffered a loss of earning capacity supported by substantial evidence?***

[¶ 21] Although we conclude, as a matter of law, that the hearing examiner properly interpreted Wyo. Stat. Ann. § 27–14–405(h)(i) in assessing what wage to use when determining the appellant's PPD eligibility, we must now review whether the ultimate finding that she failed to meet her burden of proving a loss of earning capacity was supported by substantial evidence.

"In determining whether an employee has suffered a loss of earning capacity both medical and non-medical evidence may be relevant." *Chavez v. Memorial Hosp. of Sweetwater County,* 2006 WY 82, ¶ 8, 138 P.3d 185, 189 (Wyo.2006). *See also, McCarty [v. Bear Creek Uranium Co.],* 694 P.2d [93,] 94–95 [ (Wyo.1985) ]. Although no individual factor is determinative, the following considerations are relevant to the loss of earning capacity inquiry: the employee's physical impairment, in-

cluding the nature and extent of his injury; age; education; actual earnings, including pre-injury and post-injury earnings; ability to continue pre-injury employment; and post-injury employment prospects. *Chavez*, ¶ 8, 138 P.3d at 189. *See also, State ex rel. Wyo. Worker's Comp. Div. v. White*, 837 P.2d 1095 (Wyo.1992); *Whiteman v. Workers' Safety and Comp. Div.*, 987 P.2d 670 (Wyo.1999). The fact finder has the discretion to assign weight to the individual factors. *McCarty*, 694 P.2d at 95; *Chavez*, ¶ 8, 138 P.3d at 189. "Wages earned by the employee [are] material to the question of the employee's earning capacity and [are] entitled to whatever weight the fact finder gives to it." *McCarty*, 694 P.2d at 95.

*Bonsell*, 2006 WY 114, ¶ 12, 142 P.3d at 689.

[¶ 22] The appellant argues that the finding that she was capable of earning 95% of her pre-injury wage was not supported by substantial evidence. The appellant's claim appears to be based primarily on her mistaken belief that the law requires a hearing examiner only to consider a claimant's wage immediately upon returning to the workforce. This is evidenced by her argument that the hearing examiner ignored the $21.00 per hour wage she was earning when she first returned to work, which wage was less than 95% of her pre-injury wage. Although the hearing examiner did not base the appellant's PPD eligibility exclusively on the $21.00 per hour wage, the decision letter clearly indicates that it considered this in making its findings. The hearing examiner's findings noted the appellant's initial wage and the conditions under which she initially returned to the workforce. The testimony at the hearing indicated that the appellant's initial return to work was on a "very part-time" basis, as she was still on prescription medication for her pain. Also, the evidence before the hearing examiner showed that when the appellant initially re-entered the workforce, she had reached an "informal light-duty agreement" with the Division

wherein the appellant "would turn into [the Division] her check stubs for the period of time she was working light duty and she would then be paid 80 percent of the difference between her pre[-]injury wage and what she was earning [at that time]." Also, the hearing examiner reviewed and relied upon the vocational evaluation indicating that there were three jobs for which the appellant was qualified, each of which paid 95% or more of her pre-injury wage. Finally, the hearing examiner considered the testimony of the appellant's current employer that at the time of hearing, the appellant was earning $25.00 per hour and working a 40–hour week. This schedule and pay rate was more than she was earning prior to her injury.

[¶ 23] Based on the evidence presented, the hearing examiner concluded that the appellant failed to meet her burden of proof to show, by a preponderance of the evidence, that because of her injury she was unable to return to work at a wage that was at least 95% of her pre-injury monthly gross income. After reviewing the record before us, we conclude that this determination was supported by substantial evidence.

## CONCLUSION

[¶ 24] The OAH did not err when it interpreted Wyo. Stat. Ann. § 27–14–405(h)(i) as allowing it to consider more than just the appellant's wage immediately upon returning to the workforce following her injury. Also, the OAH's determination that the appellant was capable of earning 95% of her pre-injury wage, and thus not eligible for PPD benefits, was supported by substantial evidence.

[¶ 25] Affirmed.